IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INTEGRAND ASSURANCE COMPANY,<br><br>                      Plaintiff,<br>v.<br><br>EVEREST REINSURANCE COMPANY; ODYSSEY REINSURANCE COMPANY; CATLIN (XL CATLIN) UNDERWRITING INC., MIAMI ON BEHALF OF LLOYD'S SYNDICATE 2003, LONDON; SWISS REINSURANCE AMERICA CORPORATION ARMONK; ALLIED WORLD RE ON BEHALF OF LLOYD'S SYNDICATE 2232, LONDON; MS AMLIN P/C; ASPEN INSURANCE UK LIMITED TRADING AS ASPEN RE LONDON, ENGLAND; LIBERTY SPECIALTY SERVICES LTD LIB 4472, PARIS OFFICE UNDERWRITING FOR AND ON BEHALF OF LLOYD'S SYNDICATE NO. 4472,<br><br>                      Defendants. | CASE NO. 19-cv-01111 (DRD)<br><br>RE:   INJUNCTION AND DAMAGES FOR VIOLATION OF ANTITRUST LAWS; INSURANCE CODES; UNFAIR COMPETITION; DECLARATORY JUDGMENT; BREACH OF CONTRACT; COLLECTION OF MONEY AND DAMAGES |

**CODEFENDANT ODYSSEY REINSURANCE COMPANY'S
MOTION AND MEMORANDUM OF LAW REQUESTING
DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST
ODYSSEY REINSURANCE COMPANY AND COMPELLING
<u>THE IMMEDIATE ARBITRATION OF ALL SUCH CLAIMS</u>**

**TO THE HONORABLE COURT:**

COMES NOW Odyssey Reinsurance Company ("Odyssey Re") by its undersigned counsel and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and Federal Rules of Civil Procedure 12(b)(1) and (6), moves this Court to dismiss this action without prejudice with respect to Odyssey Re and to compel arbitration of all claims asserted herein by the Plaintiff against Odyssey Reinsurance Company.

## I. INTRODUCTION

Plaintiff Integrand Assurance Company ("Integrand") demanded payment of certain losses allegedly caused by Hurricane Irma, while refusing to comply with its obligation to permit inspection under the relevant reinsurance agreements. Then, Integrand commenced arbitration against Odyssey Re while refusing to comply with the obligations imposed by the applicable arbitration clause. Odyssey Re therefore had to resort to this Court pursuant to the Federal Arbitration Act ("FAA") in a separate case to compel arbitration. Integrand has now filed the instant removed lawsuit under Commonwealth law attempting to annul the very arbitration clause upon which it relied in its arbitration claims against Odyssey Re.

Such continued efforts to judicially move the goalpost are expressly barred by the FAA, a statute which this Court has described as "couched in imperative binding terms." The type of grounds alluded to by Integrand in its attempt to avoid arbitration have been rejected by the United States Supreme Court, the Court of Appeals for the First Circuit, and by this Honorable Court. Accordingly, Integrand's claims against Odyssey Re must be dismissed, arbitration compelled, and Integrand's causes of action must be referred to the arbitration panel being configured in Odyssey's separate federal judicial proceeding.

## II. FACTUAL BACKGROUND

Co-defendant Odyssey Re is a corporation organized and existing under the laws of the State of Connecticut, with principal place of business at 300 First Stamford Place, Stamford, CT 06902. Plaintiff Integrand Assurance Company ("Integrand") is upon information and belief a corporation organized and existing under the laws of the Commonwealth of Puerto Rico with principal place of business at 369 Ensenada, Urbanización Caparra Heights, San Juan, PR 00920.

Odyssey Re and Integrand executed two reinsurance agreements effective May 1, 2017: (a) a *Commercial Catastrophe Excess of Loss Reinsurance Agreement* No. Bl10817IB11061, and

(b) a *Personal Lines Catastrophe Excess of Loss Reinsurance Agreement* No. Bl10817IB11062 (hereafter jointly the "*Reinsurance Agreements*"). Pursuant to the *Reinsurance Agreements*, Odyssey Re agreed to reinsure Integrand for certain losses arising out of Integrand's property and casualty insurance policies.[1]

Because of significant issues relating to Integrand's apportionment of losses to Hurricane Irma, among other things, Odyssey Re asserted its "Right to Inspection" under the *Reinsurance Agreements*. Integrand initially agreed to Odyssey Re's inspection, but when the date for the audit approached it refused to allow access to important records that Odyssey Re asked to review and that are clearly covered by the "Right to Inspection" clause. Then without waiting for the commencement of the audit, on December 5, 2018 Integrand served Odyssey Re with a "Demand for Arbitration." **Exhibit A**.

Both *Reinsurance Agreements* contain the following identical article concerning arbitration (hereafter the "*Arbitration Clause*"):

### ARBITRATION

1.    Disputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to Arbitration. This Arbitration shall be a condition precedent to the commencement of any action at law.

2.    Each party shall appoint an Arbitrator and the two so named shall, before they enter upon the Arbitration, appoint an Umpire. In the event of one party failing to name an Arbitrator within 30 (thirty) days of the other party requesting it in writing to do so, or in the event of the Arbitrators failing to appoint an Umpire within 30 (thirty) days of their own appointments, the said Arbitrator and/or Umpire shall be appointed by the President of the Chamber of Commerce in the city where the Arbitration takes place.

3.    The Arbitrators and Umpire shall be *disinterested current or retired executive officers of insurance or reinsurance companies or Underwriting*

---

[1] The *Reinsurance Agreements* are not attached as an exhibit hereto, since Odyssey Re will be consulting with Integrand regarding its desired level of restriction so as to supplement the record with such documents. Paragraph 35 of Integrand's Superior Court Complaint (Docket 1, Exh.1) admits to the existence and content of the Arbitration Clause contained in the *Reinsurance Agreements*.

3

*Members at Lloyd's*. The Court of Arbitration shall be in San Juan, Puerto Rico, unless some other place is mutually agreed upon by the parties in this Agreement.

4. Within 30 (thirty) days after the appointment of the Umpire, the Arbitrators and Umpire shall meet, and determine a timely period for discovery, discovery procedures and schedules for hearings. Should the two Arbitrators fail to agree, then the matter in dispute shall be referred to the Umpire. The Arbitrators and Umpire shall make their award with a view to effecting the general purposes of this Agreement. They may abstain from judicial formalities and from strictly following the rules of the law and shall make their decision according to the practice of the reinsurance business.

5. The Arbitrators or Umpire shall give an award in writing within 60 (sixty) days of the hearing or, if no hearing is held, the submission of all evidence by the parties. The award agreed upon by the two Arbitrators or by the majority of the Arbitrators and the Umpire shall be final and binding on both parties. The costs of Arbitration shall be paid as the Court of Arbitration directs. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in a territory in which the party in default is domiciled or has assets or carries on business.

6. If an Arbitrator or Umpire, subsequent to his appointment, is unwilling or unable to act, a new Arbitrator or Umpire shall be appointed in his stead by the aforementioned procedure. (emphasis supplied).

**A. Procedural History of the Arbitration**

On December 14, 2018, Integrand sent Odyssey Re a letter naming Integrand's party-appointed arbitrator, who upon information and belief is not a "current or retired executive officer[] of [an] insurance or reinsurance company[y] or Underwriting Members at Lloyd's," and therefore fails to meet the plain and unequivocal requirements of Subparagraph 3 of the *Arbitration Clause*.

By letter of January 4, 2019 Odyssey Re's counsel informed Integrand that Odyssey Re had selected as its arbitrator a former executive officer of a duly licensed insurance company with no further ties to that company, in full compliance with the pre-commencement requirements of the *Arbitration Clause*. In said letter Odyssey Re also advised that Integrand's proposed candidate had never been an executive of an insurance or reinsurance company as required by Subparagraph 3 of the *Arbitration Clause* and requested that Integrand provide

4

Odyssey Re with any evidence to the contrary. On January 8, 2019 Integrand's counsel responded by enclosing its candidate's resumé and in essence erroneously arguing that its candidate's prior work for an insurance broker and a services company was sufficient to comply with the *Arbitration Clause*.

Odyssey Re responded by advising Integrand that a thorough investigation and examination of Integrand's candidate's resumé had re-confirmed that he had never occupied an executive position with an insurance or reinsurance company. Odyssey Re reiterated its request that Integrand provide any information it had to demonstrate that Integrand's candidate ever occupied an executive officer position with a licensed insurance or reinsurance company and invited Integrand to meet to attempt to resolve the matter expeditiously and proceed with the arbitration. Integrand's counsel never responded to such request.

**B. Court Filings**

In light of the lapse caused by Integrand's failure to appoint an arbitrator who complied with the contractual requirements, and seeking to expedite the arbitration, on February 1, 2019 Odyssey Re filed with this Court, on the basis of diversity of citizenship jurisdiction, a "Petition to Compel Arbitration" pursuant to Sections 4 and 5 of the Federal Arbitration Act, 9 U.S.C. §§4, 5. That action has been administratively assigned to Judge Carmen C. Cerezo with Case Number 19-MC-035 (CCC) (hereafter the "*FAA Section 5 Case*").

Odyssey Re and Integrand had acknowledged that they reached an impasse in the arbitrator selection procedure (hereafter the "Arbitrator Selection Impasse"). Accordingly, in the *FAA Section 5 Case* Odyssey Re sought remedies pursuant to 9 U.S.C. §5, a provision of the FAA specifically designed by Congress to expeditiously resolve such arbitrator selection impasses. To such effect, Section 5 of the FAA, 9 U.S.C. §5, provides in pertinent part:

5

**Section 5. Appointment of arbitrators or umpire**

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, *such method shall be followed*; […] if a method be provided and any party thereto shall fail to avail himself of such method, or if *for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire*, or in filling a vacancy, then upon the application of either party to the controversy *the court shall designate and appoint an arbitrator or arbitrators or umpire*, as the case may require […]. (emphasis supplied).

Pursuant to FAA §5, a deadlock in the appointment of an arbitrator or umpire in accordance with an arbitration clause in a reinsurance contract such as confronted by Odyssey Re and Integrand is deemed a classical "*lapse* in the naming of an arbitrator or arbitrators or umpire" as a result of which Congress required that a federal court with jurisdiction "*shall* designate and appoint an arbitrator or arbitrators or umpire, as the case may require […]." U.S.C. §5 (emphasis supplied). See, *Odyssey Reinsurance Company v. Certain Underwriters at Lloyd's London Syndicate 53*, 615 Fed. Appx 22 (Westlaw) (2nd Cir. 2015) (Summary Order).[2]

In its *Section 5 Case*, Odyssey Re therefore requested Judge Cerezo to promptly appoint, in Integrand's stead, a qualified arbitrator who complies with the requirements of the *Arbitration Clause* in that he or she be a "disinterested current or former executive officer of an insurance or reinsurance company or an Underwriting Members at Lloyd's," and that Judge Cerezo further immediately appoint an "umpire" who also complies with such contractual requirements, either from a running list provided by a reputable international body specializing on such matters such as ARIAS U.S. (https://www.arias-us.org/), or as otherwise determined by the Court. Odyssey Re further requested in its *Section 5 Case* that Integrand be ordered by the Court to proceed forthwith to arbitration "in the manner provided for in [the parties] agreement," citing 9 USC §4. See, Doc. No. 1 in Case Number 19-MC-035 (CCC), ¶30, p. 9.

---

[2]      Attached as **Exhibit B**.

On February 2, 2019, Odyssey Re's counsel received an email from Integrand's counsel advising Odyssey Re that Integrand itself had filed a Puerto Rico-court lawsuit seeking annulment of the *Arbitration Clause*. On that date, Odyssey Re and Integrand exchanged copies of the *Petition* filed in Odyssey Re's *FAA Section 5 Case* and Integrand's Puerto Rico-complaint.

Integrand filed its Puerto Rico-court complaint in the Superior Court of First Instance for San Juan in Case No. SJ 2019 CV 01015 (hereafter the "*Superior Court Complaint*" or "*Sup. Ct. Cpt.*"). The *Superior Court Complaint* asserts causes of action under Puerto Rico law against Odyssey Re as well as against several other reinsurance companies. Such causes include (a) a request for an injunction under Puerto Rico antitrust law ordering all defendants to cease delaying payment and failing to honor claims made by Integrand with respect to property and casualty losses claimed by reason of Hurricane Irma (*Sup. Ct. Cpt* ¶¶ 21-23); (b) a claim for treble damages against all defendants pursuant to Puerto Rico antitrust law (*Sup. Ct. Cpt* ¶¶ 24-27); (c) a claim for damages in tort under Article 1802 of the Puerto Rico Civil Code and Article 27.020 of the Puerto Rico Insurance Code (*Sup. Ct. Cpt* ¶¶ 28-32); (d) a claim for declaratory judgment, grounded on the Arbitrator Selection Impasse or alternatively on the *rebus sic stantibus* doctrine declaring the nullity of the *Arbitration Clause* (*Sup. Ct. Cpt* ¶¶ 33-39); a claim for specific performance of defendants' reinsurance agreements on the basis of an allegation that the arbitration process is "ineffective and null" (*Sup. Ct. Cpt* ¶¶ 40-44); and a claim for damages for breach of contract under Puerto Rico law (*Sup. Ct. Cpt* ¶¶ 45-47). See, Doc. No. 1-1 (*Superior Court Complaint*) and Doc. No. 8-1 (Certified Translation).

In sum, Integrand had therefore indicated its agreement to permit Odyssey Re's rightful inspection of Integrand's records to inquire as to the nature and extent of Integrand's split of alleged losses by reason of Hurricane Irma, then avoided such inspection, then of its own initiative filed for arbitration, then ignored the requirements of the *Arbitration Clause*, and then

filed a lawsuit questioning the same arbitration that Integrand itself had just commenced. On February 4, 2019 Odyssey Re removed Integrand's Superior Court case to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Integrand's *Superior Court Complaint* is therefore currently before this Honorable Court in the instant case.

### III. APPLICABLE LAW

Section 4 of the FAA, 9 U.S.C. §4, provides in relevant part:

**Section 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination**

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court […] for an order directing that such arbitration proceed in the manner provided for in such agreement.

Because of the strong federal policy favoring expedited arbitration as contractually agreed, and as an exception to the procedures governing most civil cases in federal court, Section 6 of the FAA provides that an application to the court to compel arbitration "shall be made and heard in the manner provided by law for the making and hearing of motions […]." 9 U.S.C. §6. Indeed, when a new petition to compel arbitration is made only a 5-day notice summons is required. 9 U.S.C. §4. The FAA thus "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 29 (1983).

As stated by the Supreme Court with reference to Section 2 of the FAA:

This provision establishes "a liberal federal policy favoring arbitration agreements." […] It requires courts to enforce agreements to arbitrate according to their terms. […]."

*Compucredit v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citing *Moses H. Cone*, 460 U.S. at 24, other citations omitted); *PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 18 (1st Cir. 2010).

"The language of Section 2 of the FAA is couched in imperative binding terms." *De Jesus-Santos v. Morgan Stanley Dean Witter, Inc.*, 2006 WL 752997 (D.C.P.R. 2006) (Domínguez, J.). It suffices for a party seeking to compel arbitration to demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011).

With respect to the first three requirements stated above, i.e., that there be a valid agreement to arbitrate, that it may be invoked by Odyssey Re, and that Odyssey Re and Integrand be bound by it, such requirements are demonstrably uncontested in this case. Integrand itself filed a "Demand for Arbitration" against Odyssey Re under the *Reinsurance Agreements* pursuant to the *Arbitration Clause*. See **Exhibit A**. Therefore, Integrand admits the existence of a valid agreement to arbitrate that binds both parties.

With respect to the last requirement, that the claim asserted come within the clause's scope, the determination is similarly clear. Integrand itself filed a demand for arbitration requiring payment under the *Reinsurance Agreements*, and it is therefore self-evident that a dispute relating to payment and inspection under the *Reinsurance Agreements* is covered by the *Arbitration Clause*. In any event, the *Arbitration Clause* is extremely broad, stating: "Disputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to Arbitration. This Arbitration shall be a condition precedent to the commencement of any action at law." The *Clause* therefore covers not only all disputes that "arise out of" the *Reinsurance Agreements*, but also those that concern their interpretation or validity during or after their operation. Moreover, the *Clause* contains an express prohibition against the commencement of "any action at law" prior to arbitration.

Consistent with the aforementioned federal policy, Section 2 of the FAA, 9 U.S.C. §2, provides that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *National Federation of the Blind v. Cadigan*, 904 F3d 70 (1st Cir. 2018). As stated above, Integrand by its own actions admits that the *Arbitration Clause* is both "valid" and "enforceable." However, Integrand appears to suggest in its *Superior Court Complaint* that said *Clause* may somehow be subsequently revoked if, among other things, there comes a time when it "does not adjust itself to the current needs of the insurance industry." *Sup. Ct. Cpt* ¶38. But Integrand itself commenced the arbitration. It would be extraordinarily disingenuous, if not troubling, for Integrand to allege that the insurance industry in Puerto Rico "radically changed" since its commencement of arbitration two-months ago to the point of inexplicably requiring the annulment of the *Arbitration Clause*. As more fully set forth hereafter, such meager argument collapses on its own face when confronted with the imperative federal policy enforcing contractually-agreed arbitration.

The only two grounds alluded to in Integrand's *Superior Court Complaint* for potential revocation or annulment of the *Arbitration Clause* are (a) the Arbitrator Selection Impasse (Integrand alleges that the lack of a specific contractual mechanism to resolve the arbitrator selection deadlock implies that the *Arbitration Clause* "is ambiguous" and "does not adjust itself to the current needs of the insurance industry"), *Sup. Ct. Cpt* ¶38; and (b) Integrand's assertion of the doctrine of *rebus sic stantibus*. *Sup. Ct. Cpt* ¶¶ 39. The initial judicial determination is thus whether this threshold issue of arbitrability is for the Court or the arbitrator to decide.

In a line of cases beginning with *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), the United States Supreme Court has divided challenges to the validity of

arbitration agreements into two types: (1) challenges to the validity of the specific agreement to arbitrate, and (2) challenges to the validity of the whole contract containing the agreement to arbitrate. See *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70, (2010); *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440 at 444 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. at 402–04. The type of challenge governs who resolves it. Challenges of the first type (invalidity of the agreement to arbitrate) are normally for courts to consider before compelling arbitration, whereas challenges of the second type (invalidity of the contract) are for arbitrators to decide in the first instance. *Rent–A–Ctr.*, 561 U.S. at 70–71; *Buckeye*, 546 U.S. at 444–46; *Prima Paint*, 388 U.S. at 402–04.

In the present case, Integrand's challenges the validity of the *Arbitration Clause*. Therefore, this Court is called upon to make the threshold determination of arbitrability.

In its effort to avoid arbitration Integrand alleges that after its commencement, application of the *Arbitration Clause* became overly burdensome because Odyssey Re and another reinsurer "continued [a] pattern of delay and uncertainty by conveniently and identically questioning the qualifications of the arbitrator selected by Integrand, with the effect of rendering such procedures ineffective and inoperative." *Sp. Ct. Cpt*. ¶17. Integrand further alleges that "[i]nsofar as the arbitration agreement does not set forth a mechanism to resolve [such] objection, and inasmuch as said agreement is ambiguous, and does not conform to the current needs of the insurance industry at this juncture, the arbitration process is rendered inoperative and ineffectual. […] Therefore, this Honorable Court should issue judgment declaring that the aforementioned arbitration covenant is null due to its ambiguity and defects." *Sp. Ct. Cpt*. ¶¶37-38. Integrand prays in the alternative "that the Reinsurance Contracts be revised to nullify the arbitration covenant in accordance with the *rebus sic stantibus* doctrine." *Sp. Ct. Cpt*. ¶39. See Doc. 8-1 (Certified Translation of *Superior Court Complaint*).

With respect to the Arbitrator Selection Impasse, Integrand's assertion is rebutted by the FAA itself.  In FAA §5 Congress provided for an expedited procedure precisely to immediately resolve such impasses, to the point where it required that in the case of a "lapse in the naming of an arbitrator or arbitrators or umpire, the federal district court *shall* designate and appoint an arbitrator or arbitrators or umpire, as the case may require." 9 U.S.C. §5 (emphasis supplied).  This is precisely why Odyssey Re promptly filed its *FAA Section 5 Case* before Judge Cerezo.

It is rather telling that instead of availing itself of such summary procedure provided by federal law to compel the immediate selection of the arbitrators and thus expeditiously to present its claims to the arbitration panel, Integrand would rather resort to a multi-party lawsuit in Commonwealth court that, unlike arbitration, involves potential procedural and interlocutory delays and appeals before matters are ultimately resolved.  See, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346, (2011) ("A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results,'" (quoting *Preston v. Ferrer*, 552 U.S. 346, at 357–358 (2008) (citations omitted).  Integrand's allegation that the Arbitrator Selection Impasse warrants annulment of the *Arbitration Clause* is therefore meritless.

With respect to Integrand's asserted doctrine of *rebus sic stantibus*, such claim is similarly unavailing.  Firstly, the FAA itself again negates Integrand's *rebus* request.  Courts must "'rigorously enforce' arbitration agreements according to their terms, […] even for claims alleging a violation of a federal statute, unless the FAA's mandate has been "'overridden by a contrary congressional command,'" *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2306 (2013), quoting *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665.  Therefore, under the circumstances of this case application of a state-law doctrine prospectively to modify or annul a contractually agreed-upon, valid and enforceable arbitration clause, is an impossibly high hurdle that cannot overcome such an imperative and binding federal policy.

Moreover, in *Casera Foods, Inc. v. E.L.A.*, 108 D.P.R. 850, 856 (1979) the Supreme Court of Puerto Rico held that the exceptional doctrine of *rebus sic stantibus* must be applied extremely sparingly, and that at the very least it requires the concurrence of <u>every single one of</u> several elements including, among others, (a) that the event giving rise to the request to apply the doctrine be 'unforeseeable', (b) that there be an extraordinary difficulty approaching impossibility to perform, (c) that "risk" <u>not</u> be an element of the contract, and (d) that there be no fraudulent acts by any of the parties. *Casera Foods, Inc. v. E.L.A.*, 108 D.P.R. 850 (1979), 1979 WL 59091, 8. P.R. Offic. Trans. 914, 921-922; *Banco Popular de Puerto Rico v. Sucn. Talavera*, 174 D.P.R 686 n. 14 (2008).

The *rebus* doctrine by its very nature is inapplicable to the *Reinsurance Agreements*. Those agreements precisely are contracts to underwrite <u>risks</u>, which excludes them from the application of the doctrine. *Casera,* P.R. Offic. Trans. at 921-922. In addition, Integrand has alleged no facts that would even remotely approximate an "impossibility" of its being able to abide by the *Arbitration Clause*. That again by itself negates the applicability of the *rebus* doctrine. But even more significantly, "casualty and property reinsurance" is an agreement to address events that although of uncertain timing and occurrence, are sufficiently 'foreseeable' to warrant a specialized contractual arrangement in advance of the occurrence. *Casera*'s need for an "unforeseeable" event is therefore also lacking. Indeed, if Integrand were right and the *rebus* doctrine can be a source of annulment in this case, thousands of contractual agreements would permanently lapse and become invalid in Puerto Rico upon the onset of major hurricanes.

To such effect, the United States Supreme Court has deemed allegations of undue burden in pursuing individual arbitration as insufficient to override a contractually-agreed arbitration clause. *American Express Co., supra,* 133 S. Ct. 2304, 2308-2309 (reversing the court of appeals' ruling that an arbitration clause was unenforceable because respondents had established

that they would incur prohibitive costs, and further rejecting an argument that arbitration of individual claims would contravene the policies underlying antitrust laws). See, also, *Mitsubishi Motors Corp. v. Soler–Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346 (dismissing concerns that arbitration was inadequate to handle antitrust claims "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum […]."); *Ryvelix Co. v. Onset Dermatologics*, 2014 WL 4924473 (D.C.P.R. 2014) (rejecting a *rebus sic stantibus* challenge under Puerto Rico-law that was not directed to the contract as a whole as a basis to potentially annul an arbitration clause) (Cerezo, J.). In any event, even if there were any doubts in this regard, and there are none, under federal law they must be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, S. Ct. 3346 at 3353 (1985); *Steelworkers v. Warrior & Gulf* Nav. Co., 363 U.S. 574 at 582-583 (1960).

Accordingly, all of Integrand's claims against Odyssey Re should be summarily dismissed and immediately referred to arbitration, and Integrand should be ordered to wait until Judge Cerezo appoints the arbitrator and umpire in the *FAA Section 5 Case* so that the panel will be configured, at which time it must address all of its claims against Odyssey Re to said arbitration panel. In the meantime, this Honorable Court must compel Integrand to proceed forthwith to arbitration "in the manner provided for in [the parties] agreement." 9 USC §4. This is consistent with the contractually agreed provision of the *Arbitration Clause* requiring that "[a]rbitration shall be a *condition precedent* to the commencement of any action at law." (emphasis supplied).

> As aptly stated by this Honorable Court:
>
> "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate."

*De Jesus-Santos*, *supra*, 2006 WL 752997 4 (Dominguez, J.), quoting *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984).

**WHEREFORE**, Odyssey Re respectfully requests that this Court enter an order dismissing the Complaint in this case as to co-defendant Odyssey Re and compelling Integrand Assurance Company to arbitrate all claims asserted herein against Odyssey Re to arbitration. Odyssey Re further requests that this Court enter judgment dismissing the instant action with respect to codefendant Odyssey Reinsurance Company and imposing costs and attorneys' fees on plaintiff Integrand Assurance Company.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico, this 11th of February 2019.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of the foregoing Motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record; and that further a copy of this motion is being sent by mail, messenger and/or courier to plaintiff's counsel as well as to defendants who have not yet made an appearance, to their respective addresses set forth in plaintiff's Complaint.

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, P.S.C.**
P.O. Box 70294
San Juan, PR 00936-8294
Tel: 787.756.9000
Fax: 787.756.9010
Email: pjimenez@amgprlaw.com
kstipec@amgprlaw.com

By: *s/Pedro Jiménez*
Pedro Jiménez
USDC-PR 121912

By: *s/Katarina Stipec Rubio*
Katarina Stipec Rubio
USDC-PR 206611

*Counsel for Defendant*
*Odyssey Reinsurance Company*