**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| INTEGRAND ASSURANCE COMPANY,<br><br>                        Plaintiff,<br>     v.<br><br>EVEREST REINSURANCE COMPANY; ODYSSEY REINSURANCE COMPANY; CATLIN (XL CATLIN) UNDERWRITING INC., MIAMI ON BEHALF OF LLOYD'S SYNDICATE 2003, LONDON; SWISS REINSURANCE AMERICA CORPORATION ARMONK; ALLIED WORLD RE ON BEHALF OF LLOYD'S SYNDICATE 2232, LONDON; MS AMLIN P/C; ASPEN INSURANCE UK LIMITED TRADING AS ASPEN RE LONDON, ENGLAND; LIBERTY SPECIALTY SERVICES LTD LIB 4472, PARIS OFFICE UNDERWRITING FOR AND ON BEHALF OF LLOYD'S SYNDICATE NO. 4472,<br><br>                        Defendants. | CASE NO. 19-cv-01111 (DRD)<br><br>RE:   INJUNCTION AND DAMAGES FOR VIOLATION OF ANTITRUST LAWS; INSURANCE CODES; UNFAIR COMPETITION; DECLARATORY JUDGMENT; BREACH OF CONTRACT; COLLECTION OF MONEY AND DAMAGES |

**EXHIBIT B**

**CODEFENDANT ODYSSEY REINSURANCE COMPANY'S**
**MOTION AND MEMORANDUM OF LAW REQUESTING**
**DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST**
**ODYSSEY REINSURANCE COMPANY AND COMPELLING**
<u>**THE IMMEDIATE ARBITRATION OF ALL SUCH CLAIMS**</u>

615 Fed.Appx. 22
This case was not selected for publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

ODYSSEY REINSURANCE COMPANY, Petitioner–Appellant,
v.
CERTAIN UNDERWRITERS AT LLOYD'S LONDON SYNDICATE 53, Reliastar Reinsurance Group (DK), a division of Reliastar Life Insurance Company, Respondents–Appellees.

No. 14–2840–cv.
|
Aug. 26, 2015.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Crotty, Judge).
**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **VACATED,** and the cause is **REMANDED** with instructions that the District Court appoint an arbitration umpire pursuant to Section 5 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 5.

**Attorneys and Law Firms**

David C. Frederick (Stephen M. Kennedy, Linsey M. Routledge, Clyde & Co U.S. LLP, New York, NY, on the brief), Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, for Petitioner–Appellant.

William A. Maher (Michael C. Ledley, on the brief), Wollmuth Maher & Deutsch LLP, New York, NY, for Respondents–Appellees.

PRESENT: JOSÉ A. CABRANES, GERARD E. LYNCH and CHRISTOPHER F. DRONEY, Circuit Judges.

#### SUMMARY ORDER

Petitioner Odyssey Reinsurance Company ("Odyssey") appeals from the District Court's June 30, 2014 judgment denying its petition to appoint an arbitration umpire pursuant to 9 U.S.C. § 5. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's determinations of law, such as the proper interpretation of a statute, *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir.2006), and we review for clear error its factual findings, *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 119 (2d Cir.2012).

Upon review of the record and relevant law, we conclude that the District Court improperly denied Odyssey's petition on the mistaken belief that it lacked the statutory authority under the FAA to resolve the parties' deadlock over the appointment of an umpire. When an arbitration agreement provides "a method of naming or appointing ... an umpire," Section 5 of the FAA mandates that "upon the application of either party to the controversy the court *shall* designate and appoint an ... umpire" if either (1) "any party [to the agreement] shall fail to avail himself of such method," or (2) "for *any other reason* there shall be a lapse in the naming of an ... umpire." 9 U.S.C. § 5 (emphasis added). We have previously held that the "lapse" referred to in Section 5 is "a lapse in time in the naming of the arbitrator or **\*23** in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process," including a "deadlock" in the naming of an arbitrator. *In re Salomon Inc. S'holders' Derivative Litig.,* 68 F.3d 554, 560 (2d Cir.1995) (citations and internal quotation marks omitted); *see also Stop & Shop Supermarket Co. v. United Food & Commercial Workers Union Local 342,* 246 Fed.Appx. 7, 11 (2d Cir.2007) ("Each party had designated its own pick, whom the other side refused to recognize as the legitimate arbitrator. Such a deadlock satisfies FAA § 5's requirement of a 'lapse in the naming of an arbitrator.' "). Accordingly, the District Court had not only the authority but the obligation to appoint an umpire to correct a breakdown in the umpire selection process.

As to this point, the District Court conclusorily stated that "[t]here has not been a breakdown in the process that justifies court intervention." We disagree. As the District Court recognized, Odyssey continues to contest the qualifications of two of respondents' candidates.[1] Indeed, the record demonstrates that the parties sharply dispute the meaning of various terms in the parties' arbitration agreements, resulting in a deadlock over whether certain candidates for umpire are qualified and causing Odyssey to refuse to proceed to the next phase of the umpire selection process. And, although respondents proposed additional candidates even after Odyssey filed its petition in the District Court, they still assumed in their most recent proposals that one of the disputed candidates would remain on their list—a position Odyssey is unwilling to accept. This deadlock has caused a "lapse in the naming of an ... umpire," 9 U.S.C. § 5; *see In re Salomon,* 68 F.3d at 560, and has long delayed the alternative dispute resolution process—the precise situation Section 5 was designed to address, *see BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.,* 689 F.3d 481, 493–94 (5th Cir.2012) ("Congress sought, in enacting § 5, to cure indefinite delay in arbitration proceedings based on disagreement over the appointment of arbitrators by providing parties with access to a neutral forum to correct such failures."). Accordingly, Section 5 requires the District Court to designate and appoint an umpire.[2]

**\*24** For the reasons stated above, we **VACATE** the District Court's June 30, 2014 judgment and **REMAND** with instructions that the District Court appoint an arbitration umpire pursuant to 9 U.S.C. § 5.

**All Citations**

615 Fed.Appx. 22

Footnotes

[1]  The District Court relied on *Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411 (2d Cir.1980), for the proposition that "a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." *Id.* at 414 n. 4. In *Michaels,* the petitioner sought to challenge an interim arbitration award under Section 10 of the FAA, which provides for vacatur of an arbitral award where, *inter alia,* "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The parties in this case disagree over whether *Michaels*'s holding extends to challenges brought under Section 5. Because the lapse in the umpire selection process requires the District Court to intervene and appoint the umpire in any event, we need not reach the question of whether, and under what circumstances, a district court might be empowered to review candidates' qualifications prior to arbitration proceedings.

[2]  Odyssey is not entitled, however, to the full measure of relief sought in its petition. Specifically, nothing in the text of Section 5 compels the District Court to select the umpire from Odyssey's list of candidates, though it of course retains the discretion to do so. We further note that, to the extent the District Court's duty to appoint an umpire necessitates at least an implicit ruling on that individual's qualifications to serve, such consideration is appropriate insofar as it is incidental to the District Court's task under Section 5. The District Court's authority in this regard is distinct from the question of whether it could have entertained an independent, party-initiated challenge to the qualifications of a specific umpire candidate.

End of Document                                       © 2019 Thomson Reuters. No claim to original U.S. Government Works.