**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| INTEGRAND ASSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>EVEREST REINSURANCE COMPANY; ODYSSEY REINSURANCE COMPANY; CATLIN (XL CATLIN) UNDERWRITING INC., MIAMI ON BEHALF OF LLOYD'S SYNDICATE 2003, LONDON; SWISS REINSURANCE AMERICA CORPORATION ARMONK; ALLIED WORLD RE ON BEHALF OF LLOYD'S SYNDICATE 2232, LONDON; MS AMLIN UNDERWRITING LIMITED (AML2001), AS THE LONDON MARKET LEADER FOR LLOYD'S SYNDICATES:AFB0623, FB2623,CSL1084,MMX2010,CNR2088, ,MAP2791,ARK4020, and VSM5678; ASPEN INSURANCE UK LIMITED TRADING AS ASPEN RE LONDON, ENGLAND; LIBERTY SPECIALTY SERVICES LTD LIB 4472, PARIS OFFICE UNDERWRITING FOR AND ON BEHALF OF LLOYD'S SYNDICATE 4472.<br><br>Defendants. | Civil No. : 19-01111 (DRD)<br><br>RE:<br><br>INJUNCTION AND DAMAGES FOR BREACH OF ANTITRUST LAWS; INSURANCE CODE; UNFAIR COMPETITION; DECLARATORY JUDGMENT; COLLECTION AND DAMAGES.<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

**AMENDED VERIFIED COMPLAINT**

**TO THE HONORABLE DANIEL R. DOMÍNGUEZ
SENIOR, UNITED STATES DISTRICT JUDGE:**

**COMES NOW** plaintiff, Integrand Assurance Company ("Integrand"), through its undersigned counsel, and respectfully alleges and prays:

**INTRODUCTION**

1. On September 6, 2017, powerful hurricane Irma, category Five on the Saffir-Simpson Scale, struck a large portion of Puerto Rico with sustained winds of 118 miles per hour and gusts of up to 150 miles per hour, causing significant damages to Puerto Rico's infrastructure, properties and businesses, many of which were left without power and were unable to operate for the days to come. As a result, the President of the United States declared Puerto Rico an emergency zone. Barely twelve (12) days thereafter, while the damages caused by Irma were still being suffered, hurricane María struck with all of its intensity over Puerto Rico causing approximately $90 Billion in additional damages. The combination of two such destructive events, one immediately after the other, left Puerto Rico devastated and its citizens with enormous damages to their dwellings and businesses. It is estimated that more than 288,765 claims have been filed before property and casualty insurers for both events exceeding $7,200 million.

2. To protect themselves in part from the eventuality of such events, and from claims that may arise therefrom, insurance companies covering such hazards typically enter into reinsurance contracts with multinational reinsurance companies that specialize in such type of contingency. Trusting such commitment, local insurers honor their contracts with their insureds, adjusting the damages sustained and paying the claims made, and thereafter they

claim to their reinsurers in accordance with the terms and conditions of their agreements.

3. In spite of the gravity of the situation, and the undenying nature of the damages, many of these reinsurers have refused, in a collusive fashion and with a clear intent to cause harm, to honor their contractual commitments with the local insurers, particularly with respect to the distribution of damages between hurricanes Irma and María. Such arbitrary denial by the reinsurers has shaken the Puerto Rico insurance industry to its core. In addition, some reinsurers have also refused to honor claims arising under María.

4. If the reinsurers are not ordered to cease colluding among themselves so as to prevent the just apportionment and payment of claims for hurricanes Irma and Maria, the irreparable harm to the Puerto Rico, insurance industry will continue. Precisely to prevent such an eventuality, Integrand was forced to file the original Verified Complaint and now this Amended Verified Complaint.

**THE PARTIES**

5. Integrand is a corporation organized in accordance with the laws of the Commonwealth of Puerto Rico, with principal offices located at Franklin D. Roosevelt Avenue, Corner of Ensenada Street, San Juan, Puerto Rico 00920, telephone number 787-781-0707.

3

6. Everest Reinsurance Company ("Everest") is a corporation organized in accordance with the laws of the State of Delaware with principal offices at 1209 Orange Street, Wilmington, DE 19801, telephone number 908-604-3000.

7. Odyssey Reinsurance Company ("Odyssey") is a corporation organized in accordance with the laws of the State of Connecticut with principal offices at 300 First Stanford Place, Stanford, CT 06902, telephone number 203-977-8000.

8. Catlin (XL Catlin) Underwriting, Inc., Miami, on Behalf of Lloyd's Syndicate 2003, London ("XL") is a corporation organized in accordance with the laws of the State of New York, with principal offices at 1540 Broadway Avenue, New York, NY 10036, telephone number 203-964-5200, which manages a reinsurance syndicate.

9. Swiss Reinsurance America Corporation Armonk ("Swiss Re America") is a corporation organized in accordance with the laws of the State of Kansas with principal office at 5200 Metcalf, PPN111, Overland, KS 66202-1391, telephone number 913-6765200.

10. Allied World Reinsurance Management Company For and On Behalf Of Lloyd's Syndicate 2232, London ("Allied") is a corporation organized in accordance with the laws of the state of New Hampshire, with its main office at 199 Water Street, 25th floor, New York, NY 10038, telephone number 646-794-0700, which manages a reinsurance syndicate.

11. MS Amlin Underwriting Limited ("Amlin") is a corporation organized in accordance with the laws of the United Kingdom, with its principal office at The Leadenhall Building, 122 Leadenhall Street, London, EC3V, United Kingdom, telephone number 44-20-7977-8321.

12. Aspen Insurance UK Limited Trading as Aspen Re London, England ("Aspen") is a corporation organized in accordance with the laws of the United Kingdom with principal office at 30 Fenchurch Street, London EC3M 3BD, United Kingdom, telephone number 44-20-7184-8000.

13. Liberty Specialty Services Ltd Lib 4472, Paris Office Underwriting For And On Behalf Of Lloyd's Syndicate No. 4472 ("Liberty") is a corporation organized under the laws of the United Kingdom with principal office in 20 Fenchurch St., London, United Kingdom EC3M 3AW, telephone number 4440)-20-7327-1000.

**FACTS**

14. Integrand and executed Defendants reinsurance agreements nos. B110817B11061, B110817IB11062, B118171611068, B1108171B11129, among others, effective May 1, 2017, as amended, and pursuant to their respective addenda each specifies the participation of each reinsurer in the agreed upon risk (the "Reinsurance Contracts").

15. Pursuant to the terms of the Reinsurance Contracts, after the onslaught of Irma, as a first catastrophic event, Integrand obtained coverage for a second catastrophic event through

a Restatement Protection Program (RPP), restoring the catastrophe reinsurance limit to its full amount. Not only did Integrand protect against the occurrence of two catastrophic events with some of the Defendants, it also bought a third event cover 100% placed with Swiss Re America, almost immediately after hurricane Maria struck the island. Therefore, Integrand had appropriate and sufficient catastrophic protection beyond the destruction brought by hurricanes Irma and Maria.

16. Pursuant to the terms of the Reinsurance Contracts, Defendants are obliged with Integrand to accept and honor payment for all risks underwritten by Integrand within an agreed limit, and specified classes of coverage or layers, depending on the magnitude of the loss, all in a given period of time. Previous to this situation, Integrand had enjoyed a long lasting and good standing relationship with Defendants.

17. In accordance with the provisions of the Reinsurance Contracts, Integrand sent Defendants the required cash calls of claims arising under hurricanes Irma and María.

18. Despite being contractually obligated to immediately honor such claims, Defendants have delayed payments for more than nine (9) months since a first audit of Integrand's records. As a matter of fact, Defendants have engaged in a pattern of conduct to delay the processing of such claims with the clear intent to harm

Integrand. Defendants are the only reinsurers with whom Integrand contracted who have refused payment.

19. Such collusive and illegal agreement is evidenced by communications between Defendants requiring each other not to answer Integrand's claims until having a uniform response. Defendants who have audited the claims made by Integrand have shared their audit results with each other. Indeed, they have shared the results and findings of such audits among themselves, but not with Integrand. Notwithstanding that some of them have already undertaken such audit procedures of the relevant claims, none has made a final decision with regard to such claims, even though the claims have been pending for more than nine (9) months. The delay and collusion are so evident that Defendants have hired the same auditors to review the same claims. In fact, Everest and Odyssey have continued the pattern of delay and uncertainty by conveniently and identically questioning the qualifications of an arbitrator selected by Integrand in the arbitration proceedings Integrand commenced against them, rendering such procedures ineffective and inoperative.

20. Currently, the amounts owed by Defendants under the Reinsurance Agreements on account of Irma related claims are:

    a. Everest, $6,039,881;

    b. Odyssey, $4,078,304;

    c. XL, $6,355,727;

    d. Swiss Re America, $18,267,364;

    e. Allied, $ 2,154,698.98;

    f. Amlin, $1,790,427;

    g. Aspen, $7,699,301.47;

    h. Liberty, $2,499,943.

21. Currently, Swiss Re America owes Integrand the amount of $4,604,182 on account of María related claims and XL owes Integrand, the amount of $2,624,000 in María related claims.

22. All this, in spite of Integrand having complied with all of the contractual requirements for Defendants to comply with their obligations.

23. The result of Defendants' boycott in not honoring the claims from hurricane Irma and María has been to decapitalize Integrand, for which reason A.M. Best, the accrediting entity of the insurance sector, degraded Integrand's solvency classification and warned, that should this pattern continue, Integrand perspective would be negative.

**FIRST CAUSE OF ACTION**
**(Injunction — Antitrust Laws)**

24. All previous allegations contained in paragraphs 1 to 23 above are incorporated herein and made part hereof.

25. Section 1 of the Sherman Antitrust Act of 1890 provides in pertinent part that every contract or conspiracy in restraint of trade in interstate commerce is illegal. 15 U.S.C. section 1.

8

26. Section 16 of the Clayton Act in turn authorizes any person to seek injunctive relief against threatened loss or damage caused by violations of the antitrust laws. 15. U.S.C. section 26.

27. Act 77 of June 25, 1964 ("Act 77") provides that "every person shall have the right to institute proceedings for injunctions before the Court of First Instance to prevent losses or damages to his business or property by any other person, by reason of acts or intended acts" to unreasonably restrain trade or commerce. 10 L.P.R.A. section 269(a).

28. The boycott agreed upon by Defendants refusing to honor Integrand's cash calls constitutes an act that unreasonably restrains trade or commerce in interstate commerce and in Puerto Rico.

29. In light of the above, this Honorable Court must issue injunctive relief ordering Defendants to immediately cease the restraint of commerce in delaying and not honoring the claims filed by Integrand related to hurricanes Irma and María.

### SECOND CAUSE OF ACTION
### (Damages — Antitrust Law)

30. All previous allegations contained in paragraphs 1 to 23 above are incorporated herein and made part hereof.

31. Section 4 of the Clayton Act provides in pertinent part that any person injured by reason of a violation of the Antitrust

9

Paws may sue for treble damages, prejudgment interest and costs of unit including attorney's fees.  15 U.S.C. section 15.

32. Act 77 also provides that any person harmed by the acts restraining commerce has a cause of action in damages and can recover three times the amount of the damages suffered. 10 L.P.R.A. section 268.

33. As a result of the aforesaid acts in violation of the antitrust laws, Integrand has suffered, and continues to suffer, damages presently computed to be not less than $50,000.000.

34. Therefore, judgment should be issued ordering Defendants to compensate Integrand for three times the amount Integrand has suffered in damages, plus prejudgment interest, costs and attorneys' fees.

**THIRD CAUSE OF ACTION**
**(Tort Damages under PR Law)**

35. All previous allegations contained in paragraphs 1 to 23 above are incorporated herein and made part hereof.

36. Article 27.020 of Puerto Rico Insurance Code prohibits all methods of unfair competition in the insurance business. 26 L.P.R.A. section 2702.

37. Likewise, Article 27.030 of the Puerto Rico Insurance Code proscribes all arrangements to incur a boycott that results in an unreasonable restraint of the insurance business. 26 L.P.R.A. section 2703.

38. Defendants have breached the aforesaid Insurance Code sections. Their unreasonable restraint of commerce, by agreeing to boycott the payments related to the claims derived from hurricanes Irma and María, have caused damages to Integrand in an amount in excess of $50,000,000.

39. Therefore, judgment must be issued ordering Defendants to compensate Integrand for the amount of damages suffered, plus costs and attorney's fees.

**FOURTH CAUSE OF ACTION**
**(Declaratory Judgment)**

40. All previous allegations contained in paragraphs 1 to 23 above are incorporated herein and made part hereof.

41. Rule 59.1 of the Puerto Rico Rules of Civil Procedure provides that this Honorable Court has authority to declare the inefficacy of the arbitration covenant included within the Reinsurance Agreements.

42. The covenant in question provides:

**ARBITRATION**

1. Disputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to Arbitration. This Arbitration shall be a condition precedent to the commencement of any action at law.

2. Each party shall appoint an Arbitrator and the two so named shall, before they enter upon the Arbitration, appoint an Umpire. In the event of one party failing to name an Arbitrator within 30 (thirty) days of the other party requesting it in writing to do so, or in the event of the Arbitrators failing to appoint an Umpire within 30 (thirty) days of their own appointments, the said Arbitrator and/or

11

Umpire shall be appointed by the President of the Chamber of Commerce in the city where the Arbitration takes place.

3. The Arbitrators and Umpire shall be disinterested current or retired executive officers of insurance or reinsurance companies or Underwriting Members at Lloyd's. The Court of Arbitration shall be in San Juan, Puerto Rico, unless some other place is mutually agreed upon by parties in this Agreement.

4. Within 30 (30) days after the appointment of the Umpire, the Arbitrators and Umpire shall meet, and determine a timely period for discovery, discovery procedures and schedules for hearings. Should the two Arbitrators fail to agree, then the matter in dispute shall be referred to the Umpire. The Arbitrators and Umpire shall make their award with a view to effecting the general purposes of this Agreement. They may abstain from judicial formalities and from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business.

5. The Arbitrators or Umpire shall give an award in writing within 60 (sixty) days of the hearing or, if no hearing is held, the submission of all evidence by the parties. The award agreed upon by the two Arbitrators or by the majority of the Arbitrators and the Umpire shall be final and binding on both parties. The costs of Arbitration shall be paid as the Court of Arbitration directs. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in a territory in which the party in default is domiciled or has assets or carries on business.

6. If an Arbitrator or Umpire, subsequent to this appointment, is unwilling or unable to act, a new Arbitrator or Umpire shall be appointed in his stead by the aforementioned procedure.

43. In the case of co-defendants Everest and Odyssey, Integrand commenced arbitration proceedings and appointed Raymond Burgos, Esq. as arbitrator.

44. However, Everest and Odyssey, both with the sole purpose of delaying the arbitration, have objected to the designation of

Attorney Burgos for allegedly not complying with the requirements set forth in the covenant, when in fact he does comply with the same, as it has been explained to them.

45. Insofar as the arbitration agreement does not set forth a mechanism to resolve Everest and Odyssey's objection, and inasmuch as said agreement is ambiguous, and does not conform to the current needs of the insurance industry, the arbitration process is rendered inoperative and ineffectual.

46. Therefore, this Honorable Court should issue judgment declaring that the aforementioned arbitration covenant is null due to its ambiguity and defects. See Jose Carlos Fernandez Rozas, Derecho de los negocios internacionales, Madrid, 2007; Elena Artude Iribarri, El convenio arbitral en el arbitraje internacional, Madrid, Eurolex, 1997. In the alternative, the Reinsurance Contracts must be revised to nullify the arbitration covenant in accordance with the *rebus sic stantibus* doctrine.

47. Article 1207 of the Puerto Rico Civil Code provides that "[t]he contracting parties may (...) establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order". Inasmcuh as the arbitration covenant explicitly states that the arbitrators and umpire "**may abstain(...) from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business**", it is in violation of Article 1207 of Puerto

Rico Civil Code. Further, considering the damages suffered as a result of both hurricanes, which are still ongoing, not abiding by Puerto Rico law in interpreting the Reinsurance Contracts is contrary to morals and public order. Therefore, this Honorable Court should issue judgment declaring the arbitration covenant null and void.

48. Regarding Swiss Re America specifically, the arbitration covenant shall also be declared null and void because, contrary to Puerto Rico law, Swiss Re America unilaterally altered that section of the provision that gave jurisdiction to the Office of the Commissioner of Insurance of Puerto Rico.

**FIFTH CAUSE OF ACTION**
**(Specific Performance of Reinsurance Contracts; Collection of Monies)**

49. All previous allegations contained in paragraphs 1 to 23 above are incorporated herein and made part hereof.

50. Article 1077 of the Puerto Rico Civil Code provides that the person injured by a contractual violation can request the specific performance of the contract. 31 L.P.R.A. section 3052.

51. The Reinsurance Contracts provide that Defendants are obligated to immediately pay their allotment of the payments made by Integrand to Integrand's insureds resulting from the damages caused by hurricanes Irma and María.

52. Integrand has provided to all Defendants the information needed to support such payments. Nonetheless, Defendants have

14

violated the Reinsurance Contracts by not paying immediately such claims.

53. In light of the above and given that the arbitration proceeding is ineffective and null, this Court should order the specific performance of the Reinsurance Agreements and order Defendants to pay the amounts set forth in paragraph 20 and 21 above.

## SIXTH CAUSE OF ACTION
### (Damages for Breach of Reinsurance Agreement)

54. All previous allegations contained in paragraphs 1 to 23 above are incorporated herein and made part hereof.

55. Article 1054 of the Civil Code in turn provides that he who breaches a contract is liable to the other party for the damages caused. 31 L.P.R.A. section 3018.

56. In refusing to immediately pay the cash calls made by Integrand, Defendants breached the Reinsurance Contracts. Therefore, judgment should be issued ordering Defendants to compensate Integrand for all the damages caused by their breach of the terms and conditions of the Reinsurance Contracts which are estimated to exceed $50,000,000.00.

## REQUEST FOR RELIEF

**WHEREFORE,** Integrand respectfully requests that this Honorable Court issue judgement as follows:

1. Ordering Defendants to immediately cease restraining commerce by delaying and not honoring the Reinsurance Agreements;

2. Ordering Defendants to pay more than $150,000,000 in damages to Integrand, plus prejudgment interest, costs and attorney fees;

3. Ordering Defendants to pay Integrand the sums in paragraphs 20 and 21 above, plus costs and attorney fees;

4. Declaring that the arbitration covenant in the Reinsurance Contracts is ineffectual, inoperative and null;

5. Granting any other remedy, it deems just and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan Puerto Rico, this 17th day of February, 2019.

IT IS HEREBY CERTIFIED that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

**PIETRANTONI MÉNDEZ & ALVAREZ LLC**
Attorneys for Integrand
Banco Popular Center, 19th Floor
San Juan, PR  00918
Tel: (787) 274-1212
Facsimile: (787) 274-1470


S/Jorge I. Peirats
JORGE I. PEIRATS
USDC 201409
jpeirats@pmalaw.com

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

**COMES NOW,** Víctor J. Salgado, Jr., of legal age, married, President of Integrand Assurance Company, resident of Guaynabo, Puerto Rico, and under penalty of Perjury declare that:

1. My personal circumstances are as stated above.

2. I have read the above Amended Verified Complaint and, to the best of my knowledge, all the facts stated therein are true are correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 17, 2019 in San Juan, Puerto Rico.

                                                        _____
                                                        Víctor J. Salgado Jr.