# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INTEGRAND ASSURANCE COMPANY<br><br>    Plaintiff,<br><br>    v.<br><br>EVEREST REINSURANCE COMPANY; ODYSSEY REINSURANCE COMPANY; CATLIN (XL CATLIN) UNDERWRITING INC., MIAMI ON BEHALF OF LLOYD'S SYNDICATE 2003, LONDON; SWISS REINSURANCE AMERICA CORPORATION ARMONK; ALLIED WORLD RE ON BEHALF OF LLOYD'S SYNDICATE 2232, LONDON; MS AMLIN UNDERWRITING LIMITED ON BEHALF OF LLOYD'S SYNDICATES 0623, 1084, 2001, 2010,2088, 2623,2791,4020, and 5678; ASPEN INSURANCE UK LIMITED TRADING AS ASPEN RE LONDON, ENGLAND; LIBERTY SPECIALTY SERVICES LTD LIB 4472, PARIS OFFICE UNDERWRITING FOR AND ON BEHALF OF LLOYD'S SYNDICATE 4472.<br><br>    Defendants | Civil No. : 19-01111 (DRD)<br><br>RE:<br><br>INJUNCTION AND DAMAGES FOR BREACH OF ANTITRUST LAWS; INSURANCE CODE; UNFAIR COMPETITION; DECLARATORY JUDGMENT; COLLECTION AND DAMAGES.<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## OPPOSITION TO MOTION AND MEMORANDUM OF LAW REQUESTING DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST ODYSSEY REINSURANCE COMPANY AND COMPELLING THE IMMEDIATE ARBITRATION OF ALL SUCH CLAIMS

**TO THE HONORABLE DANIEL R. DOMÍNGUEZ**
**SENIOR, UNITED STATES DISTRICT JUDGE:**

**COMES NOW** plaintiff, Integrand Assurance Company (**"Integrand"**), through its undersigned counsel, and respectfully alleges and prays:

## I.   INTRODUCTION

As stated in Integrand's Amended Verified Complaint (Docket No. 11) (hereinafter, the **"Amended Verified Complaint"**), Integrand and Odyssey Reinsurance Company (hereinafter, **"Odyssey"**) executed reinsurance contracts numbers B110817IB11061, Bl10817IB11062 (collectively, the **"Reinsurance Contracts"**), effective May 1, 2017, in order to transfer Integrand's financial risk in insuring excess coverage for catastrophic events. Months later, Hurricane Irma and Hurricane Maria, in quick succession, battered the Puerto Rican archipelago.

Despite Odyssey's contractual obligation to comply with its contractual obligations and honor the requests for payment that Integrand has made for damages attributable to Hurricane Irma, Odyssey, in conjunction with other reinsurers, has purposefully delayed any decision on payment to Integrand in reference to the claims for hurricane Irma. After repeated requests for repayment, and finding itself under-capitalized due to Odyssey and the other reinsurers' refusal to abide by their agreements, Integrand served Odyssey with a Demand for Arbitration on December 5, 2018.

As the Amended Verified Complaint states, the Reinsurance Contracts contained an identical arbitration clause (hereinafter, the "**Arbitration Clause**") which reads as follows:

<u>**ARBITRATION**</u>

1.  Disputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to Arbitration. This Arbitration shall be a condition precedent to the commencement of any action at law.

2.  Each party shall appoint an Arbitrator and the two so named shall, before they enter upon the Arbitration, appoint an Umpire. In the event of one party failing to name an Arbitrator within 30 (thirty) days of the other party requesting it in writing to do so, or in the event of the Arbitrators failing to appoint an Umpire within 30 (thirty) days of their own appointments, the said Arbitrator and/or Umpire shall be appointed by the President of the Chamber of Commerce in the city where the Arbitration takes place.

3.  The Arbitrators and Umpire shall be disinterested current or retired executive officers of insurance or reinsurance companies or Underwriting Members at Lloyd's. The Court of Arbitration shall be in San Juan, Puerto Rico, unless some other place is mutually agreed upon by parties in this Agreement.

4.  Within 30 (30) days after the appointment of the Umpire, the Arbitrators and Umpire shall meet, and determine a timely period for discovery, discovery procedures and schedules for hearings. Should the two Arbitrators fail to agree, then the matter in dispute shall be referred to the Umpire. The Arbitrators and Umpire shall make their award with a view to effecting the general purposes of this Agreement. They may abstain from judicial formalities and from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business.

5.  The Arbitrators or Umpire shall give an award in writing within 60 (sixty) days of the hearing or, if no hearing is held, the submission of all evidence by the parties. The award agreed upon by the two Arbitrators or by the majority of the Arbitrators and the Umpire shall be final and binding on both parties. The costs of Arbitration shall be paid as the Court of Arbitration directs. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in a territory in which the party in default is domiciled or has assets or carries on business.

6.  If an Arbitrator or Umpire, subsequent to this appointment, is unwilling or unable to act, a new Arbitrator or Umpire shall be appointed in his stead by the aforementioned procedure.

Integrand informed Odyssey of its selection for an arbitrator on December 14, 2018. In accordance with the Arbitration Clause, Integrand selected Raymond P. Burgos Santiago, Esq., an attorney with substantial experience as an executive officer of insurance companies.

On January 4, 2019, in its letter informing of its own selection for arbitrator, Odyssey challenged the qualifications of Mr. Burgos, and requested evidence that would prove that Mr. Burgos complied with the qualifications required in the Arbitration Clause. In response, Integrand furnished Mr. Burgos's *curriculum vitae* to Odyssey on February 8, 2019, in which his experience in the insurance industry was well-documented.

Nonetheless, Odyssey obstinately persisted in its opposition to Integrand's selection of an arbitrator with more than fifteen

years of experience in the insurance industry. It requested further evidence of Mr. Burgos's insurance experience on January 10th, 2019, and requested a standstill to the arbitration on January 29th, 2019, until Integrand named an arbitrator that was to Odyssey's satisfaction. Just one day later, Odyssey again demanded that Integrand substitute its selection of arbitrator.

On February 1, 2019, Odyssey filed a "Petition to Compel Arbitration" with this Court allegedly pursuant to Sections 4 and 5 of the Federal Arbitration Act, 9 U.S.C. §§4, 5, which has been administratively assigned to Judge Carmen C. Cerezo with Case Number 19-MC-035 (CCC) (hereinafter, **"Odyssey's Petition"**), and in which Integrand has filed a Motion to Dismiss. Odyssey's Petition, predicated on the same baseless objections to Integrand's selection of arbitrator, is only the last in the series of actions taken by Odyssey to stall the resolution of the disputes arising out of the reinsurance contracts agreed with Integrand, and is wholly unsupported by applicable law.

The dilatory conduct shown and baseless objections presented by Odyssey to Integrand's choice of arbitrator have escalated to the point where they have frustrated the purpose of the Arbitration Clause, which is a speedy resolution to disputes arising out of the Reinsurance Contracts. Partly because of this, because of the conduct of other defendant reinsurers, and because of unrelated defects in the Arbitration Clause, Odyssey has left

Integrand no choice but to request that a declaratory judgment be issued to the effect that the Arbitration Clause is declared ineffective and null through the instant Amended Verified Complaint, which Odyssey now requests this court to dismiss.[1]

In the instant Motion and Memorandum of Law Requesting Dismissal of Plaintiff's Claims Against Odyssey Reinsurance Company And Compelling the Immediate Arbitration Of All Such Claims (hereinafter, **"Odyssey's Motion to Dismiss"**), Odyssey reproduces the same arguments related to its objections to Integrand's choice of arbitrator, which are without basis in the law, and further ignores that an argument that the Arbitration Clause is null and void is a textbook example of an arbitrability challenge that is for the courts to adjudicate according to applicable state contract law. The applicable state contract law in this case is Puerto Rico law, and according to the applicable Puerto Rico contract law, the Arbitration Clause should be declared null and void.

## II.  <u>LEGAL STANDARD APPLICABLE TO A MOTION TO DISMISS UNDER RULE 12(B)(6)</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the plaintiff plead "a short and plain statement of the claim showing that [it] is entitled to relief". Fed. R. Civ.

---

[1] The Amended Verified Complaint also requests injunctive relief and raises a number of claims for damages that Odyssey does not argue against here, as it is only arguing that the Arbitration Clause is valid and enforceable as a threshold matter to compel arbitration.

P. 8(a)(2). To meet this standard and to state a claim for relief sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), as interpreted by the Supreme Court of the United States, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper for failure to state a claim if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory. Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 48 (1st Cir. 2000)).

In ruling on a motion to dismiss, "a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998)). However, a court "need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Gonzalez v. Otero, 172 F.Supp.3d 477, 499 (D.P.R. 2016), *aff'd sub nom.* Gonzalez v. Velez, 864 F.3d 45 (1st Cir. 2017). A "complaint that rests on bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like will likely not survive a motion to dismiss." Velazquez-Ortiz v.

Negron–Fernandez, 174 F.Supp.3d 653, 660 (D.P.R. 2016) (internal quotation marks and citations omitted).

As such, in evaluating a motion to dismiss under Rule 12(b)(6), the Court must begin by separating a complaint's factual allegations from its legal conclusions because, unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth and should be disregarded by the Court. Id. at 677. Merely "parroting" the elements of a cause of action is not enough for a plaintiff to proceed with his claim. Id. at 678; see Sánchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009). As a second step, the Court must evaluate whether the factual allegations, taken as a whole, state a facially plausible legal claim. Ashcroft, 556 U.S. at 679. According to the Supreme Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   LAW AND ARGUMENTS

**A. Due to ambiguity, vagueness, and contract frustration the agreement to arbitrate is invalid. This is a textbook example of an arbitrability challenge for the courts to adjudicate as a matter of state contract law.**

In Odyssey's Motion to Dismiss, Odyssey argues that, given the "strong federal policy favoring expedited arbitration as contractually agreed" and the existence of the Arbitration

8

Clause, the FAA compels the parties to arbitrate. It argues that the case at hand complies with the three requirements that a party seeking to compel arbitration must demonstrate, namely, that there exists a valid agreement to arbitrate, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim is within the scope of the clause. See Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011).

However, while Integrand does not deny that the Arbitration Clause exists in the Amended Verified Complaint, it does deny that it is a valid and enforceable agreement to arbitrate. Integrand contends that the Arbitration Clause, as drafted, is null and void due to ambiguity and vagueness in its text, and due to the fact that the Arbitration Clause's purpose was frustrated due to Odyssey's dilatory conduct and baseless objections to Integrand's selection of arbitrator. These are claims, well-founded upon Puerto Rico law, that go to the heart of the Arbitration Clause's validity. On this point, the Supreme Court has stated that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago,

Inc. v. Kaplan, 514 U.S. 938, 944 (1995).[2] The First Circuit has also stated that the scope of what encompasses a question of arbitrability includes "questions about whether the parties have a valid arbitration agreement at all" and "whether a concededly valid arbitration clause encompasses a particular type of controversy." Fantastic Sams Franchise Corp. v. FSRO Ass''n Ltd., 683 F.3d 18, 25 (1st Cir. 2012). Finally, as this District Court has aptly stated in the past, "even if the FAA were applicable to the case at bar, the court would still have to resort to Puerto Rico law to ultimately adjudicate whether the dispute resolution clauses are valid and enforceable. Under the FAA, the validity and enforceability of arbitration agreements are still matters of state contract law." Garrison v. Palmas del Mar Homeowners Ass'n, Inc., 538 F.Supp.2d 468, 475 (2008) (citations omitted).

Thus, it is well-settled that arguments such as the ones advanced by Integrand in its Amended Verified Complaint, which seek a declaratory judgment to the effect that the Arbitration Clause is ineffectual and null, cannot be done away with by simply invoking the FAA. Rather, there is a real controversy regarding the validity of the Arbitration Clause which Odyssey

---

[2] The Supreme Court also stated in the First Options case that arbitrability should be subjected to arbitrators if the parties have so decided it. First Options, 514 U.S. at 943. But on this point, the Court of Appeals for the First Circuit interpreted the Supreme Court as reasoning that "parties are unlikely to have focused on the question of who should decide arbitrability, and therefore the courts should presume that they did not intend to submit arbitrability to issues to an arbitrator." PaineWebber, Inc. v. Elahi, 87 F.3d 589, 599 (1st Cir. 1996).

now seeks to enforce, and it is incumbent upon this Court to resolve the controversy in accordance with applicable state contract law.

The Reinsurance Contracts at issue contained an identical choice of law clause in their jurisdiction section that established that "[e]xcept as provided by the Arbitration Article, the validity, construction and performance of this Agreement shall be governed by the laws of the Commonwealth of Puerto Rico, and the courts of that country shall have sole jurisdiction of any dispute hereunder." Thus, the applicable state contract law with which to resolve the arbitrability claims raised by Integrand is Puerto Rico contract law. Odyssey cannot simply avail itself of the FAA to dismiss Integrand's arguments and blindly enforce an arbitration covenant, the validity of which is in dispute.

**B. Under Puerto Rico law, the arbitration covenant is invalid due to ambiguity and vagueness.**

Puerto Rico law is clear that there is no contract unless there is a concurrence of three elements: 1) the consent of the contracting parties; 2) a definite object which may be the subject of the contract, and 3) the cause for the obligation which may be established. P.R. Laws Ann. tit. 31 § 3391. Contracts must be specific as to their subject and object. Regarding the object of the contract, José Puig Brutau has argued that for there to be an object, there must be "(a) an agreement

11

of the minds; (b) from which one or more personal or credit rights arise; (c) and which imposes a series of conducts on the parties, and (d) conduct which refers to the manner in which a certain thing, object or service will be approached." 2-11 José Puig Brutau, FUNDAMENTOS DE DERECHO CIVIL 110 (1977).

In the case at hand, the Arbitration Clause in question does not set forth a mechanism to resolve Odyssey's objection to the designation of Integrand's selected arbitrator. As such, it is deficient in referring to the manner in which the arbitration will be approached, and is thus ambiguous as to its object to the point that the arbitration process has been rendered inoperative and ineffectual. Therefore, this Honorable Court should issue judgment declaring that the aforementioned arbitration covenant is null due to its ambiguity and defects. See Jose Carlos Fernandez Rozas, DERECHO DE LOS NEGOCIOS INTERNACIONALES, Madrid, 2007; Elena Artude Iribarri, EL CONVENIO ARBITRAL EN EL ARBITRAJE INTERNACIONAL, Madrid, Eurolex, 1997.

C. **Under Puerto Rico law, the arbitration covenant is invalid because it is contrary to public order.**

Article 1207 of the Puerto Rico Civil Code provides that "[t]he contracting parties may (...) establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order". P.R. Laws Ann. tit. 31 § 3372. Inasmuch as the arbitration covenant explicitly

states that the arbitrators and umpire **"may abstain (...) from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business"**, it is in violation of Article 1207 of Puerto Rico Civil Code. Further, considering the damages suffered as a result of both hurricanes, which are still ongoing, not abiding by Puerto Rico law in interpreting the Reinsurance Contracts is contrary to morals and public order. Therefore, this Honorable Court should issue judgment declaring the arbitration covenant null and void.

D. **In the alternative, under Puerto Rico law, the arbitration covenant has subsequently become invalid and ineffectual.**

In the alternative, regardless of its initial validity, the arbitration covenant has subsequently become invalid. This owes to two principal reasons.

First, the Arbitration Clause does not conform to the current needs of the insurance industry, and should thus be modified accordingly in light of the *rebus sic stantibus* doctrine, which is an implicit condition of contract formation that assumes that a contract will bind the parties unless and until there are important changes in the state of affairs contemplated by the parties when forming the contract. See Banco Popular v. Sucn. Talavera, 174 D.P.R. 686, 694 (2008). The damages suffered as a result of both hurricanes, which were unprecedented and are still ongoing, changed the material

conditions under which the parties contracted and under which they created their reasonable expectations. Thus, the Arbitration Clause should be modified to fit the current context. In the current context, not abiding by Puerto Rico law in interpreting the Reinsurance Contracts, as the Arbitration Clause allows, is contrary to morals and public order.

Second, Odyssey's dilatory conduct and baseless objections to Integrand's choice of arbitrator have so stalled the arbitration process that they have frustrated the purpose of the Arbitration Clause, which is the speedy resolution of conflicts. Two cases of the Puerto Rico Court of Appeals discuss the doctrine of contract frustration *in extenso*. In one of these cases, the Puerto Rico Court of Appeals explained the doctrine as follows:

> The frustration of the cause of the contract is a source of inefficacy produced by the emergence of circumstances after contract formation that alter the substantive expectations of the parties at the time they agreed to the contract. . . In considering the cause as the purpose or practical end that the parties wished to obtain in contracting, when subsequent events make useless to one of the parties the consecution of that end or purpose, then we face a situation where the contract's purpose has been frustrated due to lack of cause. <u>Surety & Indemnity United Company v. Jover</u>, 2011 WL 2436240, at *8 (T.A.P.R., April 28, 2011) (translation supplied).

In a subsequent case, the Puerto Rico Court of Appeals stated that "contract frustration can be characterized as one of those atypical anomalies discussed by Puig Brutau in the sense that it

is a ground for inefficacy that is not expressly stated in the Civil Code." Banco Popular de Puerto Rico v. 2007 Accurate Development Group, Inc., 2013 WL 6199963, at *10 (T.A.P.R., October 31, 2013) (citations omitted). Furthermore, it cited a Spanish legal commentator for the proposition that once an event frustrates that purpose or cause of the contract, the aggrieved party may either accept its inconvenient consequences, or oppose itself to the performance of the contract by bringing suit or by raising a defense in the litigation in which the exigibility of the frustrated contract is debated. Id. In the case at hand, the parties agreed to the Arbitration Clause precisely to create an alternative form of dispute resolution that would lead to the speedy resolution of conflicts arising out of the Reinsurance Contracts. Notwithstanding, Odyssey has exploited the ambiguity and vagueness in the Arbitration Clause, specifically its silence on resolving challenges to arbitrator qualifications, in order to stall the arbitration process. This dilatory conduct has rendered the Arbitration Clause inoperative and ineffectual in practical terms.

**E. Section 5 of the FAA, 9 U.S.C. § 5, provides no solution to Odyssey's baseless and dilatory objections to Integrand's selected arbitrator, and thus does not cure the defects of the ineffectual and ambiguous Arbitration Clause.**

Odyssey's Motion to Dismiss alleges that the very real problems posed by the Arbitration Clause's ambiguity and

vagueness, which have thus far allowed Odyssey to present baseless objections to Integrand's selection of arbitrator that have stalled the resolution of Integrand's claims and frustrated the purpose of the Arbitration Clause, are magically solved by Section 5 of the FAA, 9 U.S.C. § 5. They are not, as Section 5 of the FAA does not even conform to the facts of the case as admitted by Odyssey. The referenced section states that:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require […]. 9 U.S.C. § 5.

The problem with Odyssey's argument is that its invocation of this legal provision is at odds with, and wholly unsupported by, the applicable facts, as admitted by Odyssey itself.

With regard to the naming of an arbitrator, 9 U.S.C. § 5 clearly states that the Court may name an arbitrator in case there is a lapse in the naming of an arbitrator; however, Odyssey itself admits in the allegations contained in Paragraph 12 of Odyssey's Petition that Integrand informed it of its selection for arbitrator on December 14, 2018. That by itself should preclude any claim by Odyssey that there has been a "lapse in the naming of an arbitrator" in accordance with 9 U.S.C. § 5, and

16

that the Court is therefore authorized to name an arbitrator in Integrand's stead. To claim a lapse simply because Odyssey did not agree with Integrand's choice of arbitrator is a way of conveniently ignoring that its own factual admission does not comport with its legal argument.

Instead, Odyssey's invocation of 9 U.S.C. § 5 when Integrand has already named its arbitrator is a thinly veiled form of asking the Court reviewing Odyssey's Petition to strike Integrand's selection of arbitrator for the proceedings, which is also roundly contradicted by the applicable case law.

As the United States Court of Appeals for the Second Circuit has plainly stated, "[t]he Arbitration Act does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service." Florasynth, Inc. v. Pickholz, 750 F.2d 171, 174 (2nd Cir. 1984). This is so even in cases of apparent arbitrator partiality, where the Second Circuit has also stated that "[a]lthough the FAA provides that a court can vacate an award '[w]here there was evident partiality or corruption in the arbitrators,' *id.* § 10(a)(2), it does not provide for pre-award removal of an arbitrator." Aviall, Inc. v. Ryder System, Inc., 110 F.3d 892, 895 (2nd Cir. 1997).

With respect to pre-award removal requests based on the qualifications of the arbitrator, the Fifth Circuit has interpreted the FAA to mean that "a court may not entertain disputes over the qualifications of an arbitrator to serve merely because a party claims that enforcement of the contract by its terms is at issue, unless such claim raises concerns rising to the level that the very validity of the agreement be at issue." Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co., 304 F.3d 476, 491 (5th Cir. 2002). Other courts have followed this "well-established" rule "that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." Michaels v. Mariforum Shipping, S. A., 624 F.2d 411, 414 n. 4 (2nd Cir. 1980); see John Hancock Life Insurance Company (U.S.A.) v. Employers Reassurance Corporation, No. 15-cv-13626, 2016 WL 3460316, at *4 (D. Mass. June 21, 2016) ("[the] argument that there is an exception that permits pre-award removal where the challenge is based upon contract-based qualifications, has been considered and rejected by the Fifth Circuit."); Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co., No. 09-cv-6169-HDL, 2010 WL 431592, at *2-3 (N.D. Ill. Feb 1, 2010); Ins. Co. of N. Am. V. Pennant Ins. Co., No. 97-cv-154-FSVA, 1998 WL 103305, at *3 (E.D. Pa. Feb. 18, 1998); Marc Rich & Co., A.G.

v. Transmarine Seaways Corp. of Monrovia, 443 F. Supp. 386, 388 (S.D.N.Y. 1978).

At least one district court in the First Circuit has grappled with the question of pre-award removal of arbitrators due to challenges to their qualifications. The District Court for the District of Massachusetts has stated that it "agrees with the reasoning of the Fifth Circuit, Second Circuit and multiple district courts that have rejected the argument that courts have jurisdiction to remove an arbitrator pre-award simply because the challenge to the arbitrator invokes a qualification set out in the arbitration agreement." See John Hancock Life Insurance Company (U.S.A.), No. 15-cv-13626, 2016 WL 3460316, at *4. Thus, the jurisprudence is more than clear that 9 U.S.C. § 5 is not adequate to entertain challenges to a party's selection of arbitrator based on the argument that the arbitrator's qualifications do not comply with the contractual requirements. As such, Odyssey cannot argue that 9 U.S.C. § 5 resolves the ambiguity and vagueness contained in the Arbitration Clause and the consequent dilatory conduct and baseless objections presented by Odyssey to Integrand's selection of arbitrator, which have frustrated the purpose of the Arbitration Clause itself.

**F. In any case, Integrand's antitrust and Puerto Rico Insurance Code claims are not covered by the scope of the Arbitration Clause.**

Integrand asserts in the Amended Verified Complaint that Odyssey and other reinsurers have colluded to unreasonably restrain trade or commerce in interstate commerce in Puerto Rico, in violation of state and federal antitrust law, and therefore requests injunctive relief and statutory damages for the harm caused by Odyssey's illegal conduct. See Amended Verified Complaint, at 9-10, ¶¶ 31-34. Specifically, Integrand claims that the boycott agreed upon by Odyssey and other reinsurers in refusing to honor Integrand's cash calls constitutes an act that unreasonably restrains trade or commerce in interstate commerce and in Puerto Rico. See Id. at 9, ¶ 28. This conduct is proscribed by both federal and state antitrust laws, which provide for statutory damages that aggrieved parties have a right to recoup from transgressors. 15 U.S.C. § 15; PR Laws Ann. tit. 10 § 268. The statutory damages prescribe a recovery of three times the amount of the damages suffered, plus costs and reasonable attorney fees. Id.

Integrand furthermore argues that Odyssey and other reinsurers have violated provisions of the Puerto Rico Insurance Code that preclude unfair competition and deceptive and unjust practices, and in so doing have caused Integrand damages. See Amended Verified Complaint, at 10-11, ¶¶ 35-39. Specifically,

Integrand affirms that Odyssey and other reinsurers' illegal conduct have caused it damages. This is a tort action arising under Art. 1802 of the Puerto Rico Civil Code, which establishes that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31 § 5141. The violation of legal requirements is conduct which constitutes a fault under Art. 1802. Specifically, actions which amount to unfair competition and monopolistic practices in violation of applicable laws have been found to justify a cause of action under Art. 1802. See Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497, 525-26 (1994).

The foregoing actions, both under the antitrust and Insurance Code legislation, are non-contractual obligations that arise out of Odyssey and other reinsurers' duty to comply with the applicable law. These causes of action are known as *ex delicto*, as opposed to *ex contractu* actions. As the Puerto Rico Supreme Court has explained:

> Actions arising in contracts seek fulfillment of promises agreed to by the contracting parties. Said actions arise from the obligations freely agreed to by the contracting parties and stem from a voluntary act or omission which results in the breach of a previously constituted obligation. The fault or negligence mentioned in sec. 1802 bears no relation to a prior obligation and gave rise to actions which, before the publication of the Spanish Civil Code, were known as quasi-delicto and formerly, in common law, were called actions ex delicto. Arroyo v. Caldas, 68 P.R.R. 639 (1948). This tort does not stem from the will of the

parties, but from the breach of some obligations and duties imposed by law. <u>Santiago Nieves v. A.C.A.A.</u>, 119 D.P.R. 711, 19 P.R. Offic. Trans. 755, 760 (1987).

It is well settled that the same event can give rise to contractual and non-contractual causes of action. <u>Ramos Lozada v. Orientalist Rattan Furniture Inc.</u>, 130 D.P.R. 712, 727 ("a claim for non-contractual damages resulting from the breach of a contract lies if the act that caused the damage constitutes a breach of the general duty not to injure anyone").

Here, Odyssey's damaging actions, in collusion with other reinsurers, gave rise to both *ex contractu* and *ex delicto* causes of action. Insofar as those actions are *ex contractu*, they may fall under the scope of the ineffectual and inoperative Arbitration Clause, the validity of which is in any case in dispute. Insofar as other causes of action are *ex delicto*, such as the foregoing antitrust and Insurance Code claims, they do not.

**WHEREFORE,** Integrand requests this Honorable Court deny Odyssey's Motion to Dismiss filed by Odyssey on February 11, 2019 and grant the remedies requested in the Amended Verified Complaint.

**RESPECTFULLY SUBMITTED.**

In San Juan Puerto Rico, this 26th day of February, 2019.

IT IS HEREBY CERTIFIED that on this same date, I electronically filed the foregoing with the Clerk of the Court

using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

**PIETRANTONI MÉNDEZ & ALVAREZ LLC**
Attorneys for Integrand
Banco Popular Center, 19th Floor
San Juan, PR 00918
Tel: (787) 274-1212
Facsimile: (787) 274-1470


*S/Jorge I. Peirats*
JORGE I. PEIRATS
USDC 201409
jpeirats@pmalaw.com