## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INTEGRAND ASSURANCE COMPANY<br><br>Plaintiff<br><br>v.<br><br>EVEREST REINSURANCE COMPANY; ODYSSEY REINSURANCE COMPANY; CATLIN (XL CATLIN) UNDERWRITING INC., MIAMI ON BEHALF OF LLOYD'S SYNDICATE 2003, LONDON; SWISS REINSURANCE AMERICA CORPORATION ARMONK; ALLIED WORLD RE ON BEHALF OF LLOYD'S SYNDICATE 2232, LONDON; MS AMLIN UNDERWRITING LIMITED (AML2001), AS THE LONDON MARKET LEADER FOR LLOYD'S SYNDICATES: AFB0623, FB2623, CSL1084, MMX2010, CNR2088, MAP2791, ARK4020, AND VSM5678; ASPEN INSURANCE UK LIMITED TRADING AS ASPEN RE LONDON, ENGLAND; LIBERTY SPECIALTY SERVICES LTD LIB 4472, PARIS OFFICE UNDERWRITING FOR AND ON BEHALF OF LLOYD'S SYNDICATE 4472<br><br>Defendants | CIVIL No.: 19-cv-01111(DRD)<br><br>RE:<br><br>INJUNCTION AND DAMAGES FOR BREACH OF ANTITRUST LAWS; INSURANCE CODE; UNFAIR COMPETITION; DECLARATORY JUDGMENT; COLLECTION AND DAMAGES<br><br>JURY TRIAL REQUESTED |

### **MOTION TO DISMISS AND PETITION TO COMPEL ARBITRATION**

**TO THE HONORABLE COURT:**

**COME NOW** the co-defendants, **Catlin (XL Catlin) Underwriting Inc.,** *For and On Behalf of Lloyd's Underwriting Syndicate No. 2003,* **MS Amlin Underwriting Limited**, *For and On Behalf of Lloyd's Underwriting Syndicate No. 2001,* **Aspen Insurance UK Limited**, and **Liberty Specialty Services Ltd.**, *For and On Behalf of Lloyd's Syndicate No. 4472* (hereinafter, collectively, referred to as the "Appearing Defendants"), through the undersigned attorneys, and respectfully STATE and PRAY as follows:

65163264-1

## I. FACTUAL BACKGROUND

**Catlin (XL Catlin) Underwriting Inc**.[1] and **Aspen Insurance UK Limited** executed with Integrand Assurance Company ("Integrand") the Commercial Property Quota Share Reinsurance Agreement number B110817IB11068 ("QS Agreement"), with effective date on May 1, 2017.

On the other hand, **Catlin (XL Catlin) Underwriting Inc.**[2], **MS Amlin Underwriting Limited**[3], **Aspen Insurance UK Limited**, and **Liberty Specialty Services Ltd.**[4], executed with Integrand the Commercial Catastrophe Excess of Loss Reinsurance Agreement number B110817IB11061 ("XOL Agreement"), with effective date on May 1, 2017.

Both the QS Agreement and the XOL Agreement contain identical Right of Inspection and Arbitration clauses.

Integrand acknowledged the reinsurer's Right of Inspection. See **Docket 11**, at ¶ 17: "…more than nine (9) months since a first audit of Integrand's records"; and at ¶ 18: "Defendants who have audited the claims made by Integrand have shared their audit results with each other […] Notwithstanding that some of them have already undertaken such audit procedures of the relevant claims …".

Integrand also acknowledged the existence of the Arbitration Clause, and cited its text, which is not in controversy, as follows:

### *ARBITRATION*

1. *Disputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to arbitration. This Arbitration shall be a condition precedent to the commencement of any action at law.*

---

[1] For and On Behalf of Lloyd's Underwriting Syndicate No. 2003.
[2] For and On Behalf of Lloyd's Underwriting Syndicate No. 2003.
[3] For and On Behalf of Lloyd's Underwriting Syndicate No. 2001.
[4] For and On Behalf of Lloyd's Syndicate No. 4472.

2. *Each party shall appoint an Arbitrator and the two so named shall, before they enter upon the Arbitration, appoint an Umpire. In the event of one party failing to name an Arbitrator within 30 (thirty) days of the other party it in writing to do so, or in the event of the Arbitrators failing to appoint an Umpire within 30 (thirty) days of their own appointments, the said Arbitrator and/or Umpire shall be appointed by the President of the Chamber of Commerce in the city where the Arbitration takes place.*

3. *The Arbitrators and Umpire shall be disinterested current or retired executive officers of insurance or reinsurance companies or Underwriting Members at Lloyd's. The Court of Arbitration shall be in San Juan, Puerto Rico, unless some other place is mutually agreed upon by the parties in this Agreement.*

4. *Within 30 (thirty) days after the appointment of the Umpire, the Arbitrators and Umpire shall meet, and determine a timely period for discovery, discovery procedures and schedules for hearings. Should the two Arbitrators fail to agree, then the matter in dispute shall be referred to the Umpire. The Arbitrators and Umpire shall make their award with a view to effecting the general purposes of this Agreement. They may abstain from judicial formalities and from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business.*

5. *The Arbitrators or Umpire shall give an award in writing within 60 (sixty) days of the hearing or, if no hearing is held, the submission of all evidence by the parties. The award agreed upon by the two Arbitrators or by the majority of the Arbitrators and the Umpire shall be final and binding on both parties. The costs of Arbitration shall be paid as the Court of Arbitration directs. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in a territory in which the party in default is domiciled or has assets or carries on business.*

6. *If an Arbitrator or Umpire, subsequent to his appointment, is unwilling or unable to act, a new Arbitrator or Umpire shall be appointed in his stead by the aforementioned procedure.*

The Appearing Defendants exercised their contractual Right of Inspection as to Integrand's records, books, and accounts after identifying certain issues and/or inconsistencies with the distribution of losses between hurricanes Irma and María related to Integrand's cash calls. See Amended Verified Complaint [**Docket 11**], at ¶¶ 3, 4, 17, and 18.

Nonetheless, the Appearing Defendants encountered resistance from Integrand in providing all the requested information/documents that were necessary for them to properly assess

their liabilities under the QS and XOL Agreements and, therefore, to be in position to issue further payments thereunder.

The Appearing Defendants have also exercised their contractual right to Arbitration by serving a Notice of Arbitration upon Integrand.

## II. PROCEDURAL BACKGROUND

On January 31st, 2019, Integrand filed a Verified Complaint against several defendants, including the Appearing Defendants, before the Puerto Rico Court of First Instance, San Juan Part, civil case SJ2019CV1015 ("State Complaint"). See **Docket 8-1**. In sum, Integrand alleged that it incurred losses as a result of the passing of hurricanes Irma and Maria over Puerto Rico for which it sought compensation pursuant to certain reinsurance agreements executed with the defendants. Integrand alleged that, notwithstanding its requests, the defendants colluded among them to delay the payments; thus, causing it harm. Moreover, it referenced the audits made by some of the defendants as purported proof of their sinister plot. Id, at ¶14-17.

As a result, Integrand asserted causes of action: (1) for the issuance of an injunction pursuant to the Puerto Rico Antitrust Law ("PRAL"), Act 77 of June 25, 1964; (2) for treble damages pursuant to the PRAL; (3) for damages pursuant to Article 1802 of the Puerto Rico Civil Code; (4) for declaratory judgment as to the nullity of the Arbitration Clause in the reinsurance agreements; (5) for the specific performance of the reinsurance agreements by the issuance of payments requested by Integrand thereunder; and (6) for damages due to breach of the reinsurance agreements. Id, at ¶21-47.

Before the defendants were served with summons as to the State Complaint, on February 4th, 2019, Odyssey Reinsurance Company ("Odyssey") filed a Notice of Removal of civil case

SJ2019CV1015 to the United States District Court for the District of Puerto Rico ("USDC-PR"), civil number 19-01111. See **Docket 1**.

On February 17th, 2019, Integrand filed an Amended Verified Complaint whereby, in sum, it: (1) amended MS Amlin's name to read MS Amlin Underwriting Limited; (2) albeit with some minor changes, restated its allegations against the defendants; and (3) included a request for injunction pursuant to the provisions of the Sherman Antitrust Act of 1890 and the Clayton Act, and a request for treble damages pursuant to the provisions of the Clayton Act. See **Docket 11**.

Considering that all defendants consented to the removal of the State Complaint number SJ2019CV1015 to the USDC-PR, on March 12, 2019, the Court granted them until April 11, 2019 to file their answers/responsive pleadings. See **Docket 40**.

For the reasons that will be discussed below, the Appearing Defendants move the Court to dismiss the Amended Verified Complaint and to compel the arbitration of all the causes of action therein set forth by Integrand.

### III.  DISCUSSION

The Appearing Defendants sustain that the Arbitration Clause is valid and enforceable and, because all the causes of action set forth by Integrand in the Amended Verified Complaint [**Docket 11**] are arbitrable, this Honorable Court should dismiss the instant action, and compel their arbitration.

#### A.  The Arbitration Clause is valid and enforceable

Integrand attempts to circumvent the application of the Arbitration clause by challenging its validity on the grounds that: (1) it does not provide a mechanism to resolve Everest Reinsurance Company's ("Everest") and Odyssey's objections to the qualifications of Integrand's proposed arbitrator; (2) it is ambiguous and does not conform to the current needs of the insurance industry;

(3) the *rebus sic stantibus* doctrine applies; and (4) because it is contrary to morals and public order, inasmuch as it states that the arbitrators and umpire "may abstain (…) from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business" and, therefore, violates Article 1207 of the Puerto Rico Civil Code, P.R. Laws Ann., Tit. 31 §3372

The first ground set forth by Integrand for the annulment of the Arbitration Clause refers to its arbitration proceedings with Everest and Odyssey. Since the Appearing Defendants have commenced a separate arbitration proceeding, and there is currently no issue between them and Integrand regarding the appointment of arbitrators, this argument is irrelevant to determining the validity of the Arbitration Clause between them.

In any event, the Appearing Defendants reject Integrand's argument that the Arbitration Clause's alleged deficiency warrants its annulment because Section 5 of the Federal Arbitration Act ("FAA") specifically addresses the matter and provides as follows:

> *If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; <u>but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein</u>; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.*

(Emphasis ours). <u>See</u> 9 U.S.C.A § 5.

In light of the above, if a controversy arises between the parties to an arbitration proceeding regarding the appointment of arbitrators, the FAA mandates that, upon request by either party, the court shall designate and appoint the arbitrator or arbitrators. Therefore, Integrand's request for the annulment of the Arbitration Clause on the first ground is not only irrelevant to the Appearing

Defendants but also meritless, insofar as the provisions of the FAA cure the Arbitration Clause's alleged deficiency.

The second ground set forth by Integrand is completely unsupported and equally meritless. Integrand alleges that the Arbitration Clause is ambiguous but fails to identify any conflicting interpretations of the same, and also alleges that the Arbitration Clause does not conform to the current needs of the insurance industry but fails to identify which "needs" it refers to. Regardless of Integrand's failure to support these arguments, to the extent that they relate to the alleged deficiency in the Arbitration Clause as to the appointment of arbitrators, the Appearing Defendants reject Integrand's position for the same reasons stated above – *i.e.* the matter is specifically addressed by the provisions of the FAA.

The third ground set forth by Integrand—the applicability of the *rebus sic stantibus* doctrine—also fails to defeat the validity of the Arbitration Clause. Pursuant to this doctrine, a court may adjust a debtor's obligation or rescind a contract when unforeseeable circumstances render strict compliance with the contract unfair. William L. Bonnell Co., Inc. v. Gandara, 714 F.Supp.2d 272 (2010). For this exceptional remedy to apply, the following requirements must be met: (1) the contract must be executory, meaning that performance is not rendered until sometime after the formation of the contract; (2) the change in circumstances arises after the parties entered into the agreement; (3) the change is both unforeseeable and of indefinite duration; (4) the change results in an extraordinary difficulty or aggravation of the conditions surrounding the concession to be made by the debtor, so that it becomes significantly more costly for him to comply with his contractual obligation; and (5) the interested party must petition the court for relief. Id., at 275. The doctrine, however, does not apply to contracts that are fundamentally speculative in nature. Id.

We must first note that the reinsurance agreements are, by their very nature, speculative contracts, insofar as they transfer the financial risk relating to determinable contingencies foreseen in the contract – such as hurricanes. See Amended Verified Complaint [**Docket 11**] at ¶¶ 1 and 2. This quality alone precludes the applicability of the *rebus sic stantibus* doctrine to the instant case. Nonetheless, we also note that Integrand is not a debtor under the reinsurance agreements—rather, a creditor—and that it failed to identify any unforeseeable change in circumstances that resulted in aggravated conditions that make it unduly burdensome for it to comply with its contractual obligation.

Because the purpose of arbitration is to reduce costs and promote the expeditious resolution of disputes, AT&T Mobility LLC v. Concepcion, 563 U.S. 333, at 346 (2011), even when Integrand is not a debtor and failed to identify any unforeseeable change, aggravated conditions, or undue burden, the reality is that arbitration of its causes of action would entail a contrary result – namely, more relaxed conditions to promote and facilitate the parties' compliance with their contractual obligations. Consequently, the requirements for the *rebus sic stantibus* doctrine to apply and for its exceptional remedy to be granted are clearly not met, and Integrand cannot invoke it in the instant case.

The fourth ground set forth by Integrand – that the Arbitration Clause is contrary to morals and public order, inasmuch as it states that the arbitrators and umpire "may abstain (…) from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business" and, therefore, violates Article 1207 of the Puerto Rico Civil Code – also fails to defeat the Clauses' validity.

Section 2 of the FAA, 9 U.S.C.A § 2, provides that:

> *[a] written provision in any [...] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such*

> *contract or transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

The Supreme Court of the United States has described Section 2 of the FAA as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract. AT&T Mobility LLC, 563 U.S., at 339. While the Court recognized that Section 2's saving clause preserves generally applicable contract defenses, it emphasized that it is not intended to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives. Id., at 339.

The purpose of the FAA is to ensure the enforcement of arbitration agreements according to their terms to facilitate streamlined proceedings. Id., at 344. To that end, the parties may agree (1) to limit the issues subject to arbitration, (2) to arbitrate according to specific rules, and/or (3) to limit with whom they will arbitrate their disputes. Id., at 345. This informality is desirable because it reduces costs and promotes the expeditious resolution of disputes. Id., at 346.

The Arbitration Clause provides that the "Arbitrators and Umpire shall make their award with view to effecting the general purposes of [the] Agreement" and may abstain from "strictly following the rules of the law and shall make their decision according to the practice of the reinsurance business". Nothing in said language deviates from the federal public policy favoring arbitration and allowing the parties to a contract—especially, sophisticated parties, such as the Appearing Defendants and Integrand—to choose the rules that will apply to the proceeding in order to reduce costs and achieve the speedy resolution of disputes. Moreover, because federal law preempts state law, the provisions of the FAA render the general provisions of Article 1207 of the Puerto Rico Civil Code inapplicable to this matter. AT&T Mobility LLC, 563 U.S., at 341 ("a

court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for state-law holding that enforcement would be unconscionable, for this would enable the court to effect what … the state legislature cannot'.").

In any event, provisions such as the above-cited portion of the Arbitration Clause which allows the Arbitrator and Umpires to abstain from "strictly following the rules of the law and shall make their decision according to the practice of the reinsurance business" are commonly referred to as "honorable engagement" provisions and their validity has been upheld by the Court of Appeals for the First Circuit. *See* First State Ins. Co. v. National Cas. Co., 781 F.3d 7 (1st Cir. 2015).

Considering that none of Integrand's arguments defeat the validity of the Arbitration Clause, this Court should enforce the parties' agreement to arbitrate and, thus, compel the arbitration of all the causes of action set for by Integrand in the Amended Verified Complaint [**Docket 11**].

> **B. All the causes of action set forth by Integrand in the Amended Verified Complaint [Docket 11] are arbitrable and, therefore, should be referred to arbitration.**

To compel arbitration, the Appearing Defendants must demonstrate: (1) that a valid agreement to arbitrate exists; (2) that they are entitled to invoke the arbitration clause; (3) that the other party is bound by that clause; and (4) that the claim asserted comes within the clause's scope. Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1 (1st Cir. 2014). Having established the validity and enforceability of the Arbitration Clause, we will now establish that the claims asserted by Integrand in the Amended Verified Complaint [**Docket 11**] fall within the clause's scope.

When determining whether a certain matter should be referred to arbitration, the court should conduct its analysis "with the federal policy in favor of arbitration in mind, such that, 'as

with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability'." Grand Wireless, Inc., 748 F.3d., at 7, citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985). The Court of Appeals for the First Circuit reiterated that "[a]t minimum, this policy requires that 'ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration'". Grand Wireless, Inc. 748 F.3d., at 7, citing PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10 (1st Cir. 2010).

In pertinent part, the Arbitration Clause provides as that "[d]isputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to arbitration. This Arbitration shall be a condition precedent to the commencement of any action at law." See Amended Verified Complaint [**Docket 11**], at ¶ 42.

In its Amended Verified Complaint, Integrand alleged that it had incurred losses as a result of the passing of hurricanes Irma and Maria over Puerto Rico for which it sought compensation pursuant to the reinsurance agreements executed with the defendants. Integrand alleged that, notwithstanding its requests, the defendants colluded among them to delay payments to Integrand; thus, causing it harm. See **Docket 11**, at ¶¶14-23. Moreover, it referenced the audits made by some of the defendants as purported proof of their plot. Id., at ¶19.

As a result, Integrand asserted causes of action (1) for the issuance of an injunction, pursuant to the Puerto Rico Antitrust Law ("PRAL"), as well as the Sherman Antitrust Act of 1890 and the Clayton Act; (2) for treble damages, pursuant to the PRAL and the Clayton Act; (3) for damages, pursuant to Article 1802 of the Puerto Rico Civil Code; (4) for the specific performance of the reinsurance agreements by the issuance of payments requested by Integrand thereunder; and (6) for damages due to breach of the reinsurance agreements. Id., at ¶¶24-39, 49-56.

Consequently, the basis of Integrand's claim is the alleged delay in payments by the

defendants under the reinsurance agreements, and the primary remedy requested is the payment of the outstanding amounts. In plain terms, Integrand just wants to get paid. However, per Integrand's own allegations[5], some of the defendants, including the Appearing Defendants, exercised their contractual Right of Inspection as to Integrand's records, books, and accounts after identifying certain issues and/or inconsistencies with the distribution of losses between hurricanes Irma and María related to Integrand's cash calls. The review has not been completed as it has been frustrated by Integrand's own actions.

Without a doubt this constitutes a dispute arising out of the reinsurance agreement that is within the purview of the Arbitration Clause, regardless of how Integrand chooses to disguise it in its attempt to circumvent the Clauses' applicability. Therefore, although Integrand purports to assert causes of action under federal and state antitrust laws, because the underlying dispute is arbitrable, the entirety of the claim is arbitrable – especially considering that the Arbitration Clause does not exempt antitrust matters from its application and that any doubt concerning the scope of arbitrable issues is to be resolved in favor or arbitration. Mitsubishi Motors Corp., 473 U.S., at 627, 629. Nonetheless, even assuming *arguendo* that Integrand's claim could be classified as an antitrust claim, the Supreme Court of the United States and the Court of Appeals for the First Circuit have determined that antitrust matters are arbitrable.

In Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985), the Supreme Court of the United States reasoned as follows in ruling in favor of the arbitrability of antitrust claims:

> *As international trade has expanded in recent decades, so too has the use of international arbitration to resolve disputes arising in the course of that trade. The controversies that international arbitral institutions are called upon to resolve have increased in diversity as well as in complexity. Yet the potential of these tribunals*

---

[5] See Amended Verified Complaint [**Docket 11**] at ¶¶ 3,4, and 19.

65163264-1

*for efficient disposition of legal disagreements arising from commercial relations has not yet been tested. If they are to take a central place in the international legal order, national courts will need to "shake off the old judicial hostility to arbitration," […], and also their customary and understandable unwillingness to cede jurisdiction of a claim arising under domestic law to a foreign or transnational tribunal. To this extent, at least, <u>it will be necessary for national courts to subordinate domestic notions of arbitrability to the international policy favoring commercial arbitration</u>.*

(emphasis ours). <u>Mitsubishi Motors Corp.</u>, 473 U.S., at 638-639.

Following the above-referenced ruling, in <u>Seacoast Motors of Salisbury, Inc. v. DaimlerChrysler Motors Corp.</u>, 271 F.3d 6 (1st Cir. 2001), the United States Court of Appeals for the First Circuit reasoned as follows in favor of the arbitrability of antitrust claims:

*There is no question here of an advance waiver of antitrust claims; arbitration clauses do not eliminate substantive rights but submit them for resolution in an arbitral, rather than a judicial forum. […] And while some antitrust cases do involve large issues in which the public has an interest, <u>others are essentially business quarrels peculiar to the parties</u>. For those in the former category, government agencies remain free to pursue the defendant regardless of private actions, whether before courts or arbitrators.*

(emphasis ours). <u>Seacoast Motors of Salisbury, Inc.</u>, 271 F.3d, at 11.

Considering the validity and enforceability of the Arbitration Clause, and because all the causes of action set forth by Integrand in the Amended Verified Complaint [**Docket 11**] are arbitrable, this Honorable Court should dismiss the instant action and compel their arbitration.

**WHEREFORE**, the Appearing Defendants respectfully request that this Honorable Court grants their motion and, consequently, dismisses the Amended Verified Complaint [**Docket 11**] and compels the arbitration of the all causes of action therein set forth by Integrand, together with all such additional remedies and orders as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**,

In San Juan, Puerto Rico, this 9th day of April of 2019.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have filed appearances in this case.

        **SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ, P.S.C.**
        166 Ave. De La Constitución
        San Juan, Puerto Rico 00901
        Tel.: (787) 289-9250
        Fax: (787) 289-9253

        **s/** *Ian P. Carvajal*
        Ian P. Carvajal, Esq.
        USDC-PR No.: 212003
        E-mail: icarvajal@scvrlaw.com

        *s/ Angel E. Rotger Sabat*
        Angel E. Rotger-Sabat, Esq.
        USDC-PR No.: 208601
        E-mail: arotger@scvrlaw.com

        **s/** *Xaymara Colón González*
        Xaymara Colón-González, Esq.
        USDC-PR No.: 231405
        E-mail: xcolon@scvrlaw.com

        *Attorneys for Defendants: Catlin (XL Catlin) Underwriting Inc., MS Amlin Underwriting Limited, Aspen Insurance UK Limited, and Liberty Specialty Services Ltd.*