# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INTEGRAND ASSURANCE COMPANY, | : CIVIL NO. 19-cv-01111 (DRD) |
| Plaintiff, | : RE: |
| vs. | : INJUNCTION AND DAMAGES FOR |
| | : BREACH OF ANTITRUST LAW; |
| EVEREST REINSURANCE COMPANY, | : INSURANCE COD; UNFAIR |
| ODYSSEY REINSURANCE COMPANY, | : COMPETITION; DECLARATORY |
| CATLIN (XL CATLIN) UNDERWRITING INC., | : JUDGMENT; COLLECTION AND |
| MIAMI ON BEHALF OF LLOYD'S | : DAMAGES |
| SYNDICATE 2003, LONDON, SWISS | |
| REINSURANCE AMERICA CORPORATION | |
| ARMONK, ALLIED WORLD RE ON BEHALF | |
| OF LLOYD'S SYNDICATE 2232, LONDON, | |
| MS AMLIN UNDERWRITING LIMITED | |
| (AML2001), AS THE LONDON MARKET | |
| LEADER FOR LLOYD'S SYNDICATES: | |
| AFB0623; FB2623; CSL1084; MMX2010; | |
| CNR2088; MAP2791; ARK4020; AND | |
| VSM5678; ASPEN INSURANCE UK LIMITED | |
| TRADING AS ASPEN RE LONDON, | |
| ENGLAND, LIBERTY SPECIALTY SERVICES | |
| LTD LIB 4472M, PARIS OFFICE | |
| UNDERWRITING FOR AND ON BEHALF OF | |
| LLOYD'S SYNDICATE 4472, | |
| Defendants. | |

## EVEREST RE'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS AND TO COMPEL ARBITRATION

**TO THE HONORABLE COURT:**

COMES NOW Defendant Everest Reinsurance Company ("Everest Re"), by its undersigned counsel and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, respectfully submits this reply in further support of its motion to compel arbitration of the

dispute between Plaintiff Integrand Assurance Company ("Integrand") and Everest Re and to dismiss Integrand's action against Everest Re in this forum.

## I. PRELIMINARY STATEMENT

Integrand has contrived various grounds upon which it bases its argument that the Arbitration Clause of the Treaties is invalid and unenforceable. None of those grounds has any merit, and Integrand disregards the reality that comparable arbitration agreements are routinely enforced by the courts.

Also, there is no merit to Integrand's assertion that its antitrust claims and "tort" claims against Everest Re are not arbitrable. Those claims fall within the broad scope of the Arbitration Clause of the Treaties, which applies to "disputes arising out of" the Treaties, including disputes concerning the "interpretations or validity" of the Treaties.

Accordingly, this Court should grant Everest Re's motion to dismiss and compel Integrand to arbitrate its claims against Everest Re.

## III. ARGUMENT

**A.    The Arbitration Clause of the Treaties Is Valid and Enforceable**

**1.    The Arbitration Clause Is Not Vague and Ambiguous**

Integrand argues that the Arbitration Clause of the Treaties is invalid due to vagueness and ambiguity because it does not set forth a specific mechanism for resolving Everest Re's objections to the qualifications of Integrand's party-appointed arbitrator. *See* Doc. 74 at 6-8. Integrand contends that FAA Section 5, 9 U.S.C. § 5, cannot remedy this supposed defect in the Arbitration Clause of the Treaties because pre-award challenges to the qualifications of party arbitrators are not permissible. *Id.* There is no merit to Integrand's argument.

Integrand's argument fails for the simple reason that it is contrary to the statutory scheme under the FAA.  Under FAA Section 4, 9 U.S.C. § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may move in court for an order compelling arbitration.  As Everest Re stated in its initial motion, if Integrand truly considered Everest Re's objections to Integrand's party arbitrator to be baseless, Integrand could have moved under FAA Section 4 to compel arbitration.  Instead, Integrand chose not to seek such relief.  Integrand cannot then transform its conscious decision to forego relief under FAA Section 4 into a basis for invalidating the Arbitration Clause of the Treaties.

Also, under FAA Section 5, 9 U.S.C. § 5, a party to an arbitration agreement may seek a court order appointing an arbitrator, arbitrators, or an umpire (a) if the agreement does not provide a method for naming or appointing an arbitrator, arbitrators or an umpire, (b) if the agreement provides a method "and any party thereto shall fail to avail himself of such method," or (c) "if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire."  It is evident from the clear wording of FAA Section 5 that an arbitration agreement does not have to detail every contingency that might arise in relation to the appointment of arbitrators or an umpire in order for the arbitration agreement itself to be valid and enforceable.

All that is required for an arbitration agreement to be valid and enforceable, as set forth in FAA Section 2, 9 U.S.C. § 2, is for the parties to agree in writing to resolve "a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or part thereof" through arbitration.  Integrand and Everest Re undeniably entered into such an agreement by operation of the Arbitration Clause of the Treaties.  Not surprisingly, Integrand has not cited to a single case in which a court held that an arbitration agreement was deemed to be

unenforceable because it did not provide a specific procedure or mechanism for resolving disputes over arbitrator or umpire appointments.

Moreover, Integrand admits that FAA Section 5 does provide a means for resolving disputes concerning whether an arbitrator is qualified to serve. *See* Doc. 74 at 6-8. Integrand argues, instead, that a court may not entertain a challenge to an arbitrator's qualifications under FAA Section 5 until a final award is issued by the arbitration panel. *Id.* at 7-8. Everest Re does not accept Integrand's argument that pre-award challenges are disallowed under FAA Section 5. *See, e.g., Jefferson-Pilot Life Ins. Co. v. Leafre Reinsurance Co.*, No. 00-cv-5257, 2000 U.S. Dist. LEXIS 22645 at *5-6 (N.D. Ill. Oct. 26, 2000) (permitting a pre-award challenge to an arbitrator's qualifications under FAA Section 5). Thus, Everest Re has moved to intervene in the separate proceeding initiated by Odyssey Re against Integrand, seeking leave to file a petition against Integrand under FAA Section 5. *See* Doc. 33 (Informative Motion Advising the Court of Defendant Everest Reinsurance Company's Motion to Intervene in Case No. 19-MC-00035 (CCC)). Nonetheless, while Integrand and Everest disagree on the timing of a challenge against Integrand's party arbitrator, Integrand cannot avoid the plain fact that FAA Section 5 provides the means by which to resolve disputes relating to the appointment of arbitrators and umpires.

Last, Integrand contends that the Arbitration Clause is ineffectual because the President of the Chamber of Commerce in San Juan is not available to appoint an arbitrator or the umpire, as set forth in paragraph 2 of the Arbitration Clause. Doc. 74 at 13-14. Integrand has not cited any case law under the FAA that supports its position. Contrary to Integrand's contention, if the method stated in an arbitration agreement is no longer available, a court will make the appointment under FAA Section 5 and otherwise compel arbitration.

In *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 908-09 (S.D.N.Y. 1978), the arbitration agreement designated the New York Chamber of Commerce as the forum for arbitration, but the Chamber had ceased to provide arbitration services. In granting a motion to compel arbitration, the court determined that the unavailability of the Chamber was not a valid basis on which to avoid arbitration and held that it had the authority under FAA Section 5 to appoint the arbitrator. *Id.* at 909-11. Other courts have compelled arbitration in comparable circumstances. *See, e.g.*, *Chattanooga Mailers Union v. Chattanooga News-Free Press Co.*, 524 F.2d 1305, 1315 (6th Cir. 1975) (the Standing Committee and the Code of Procedure specified in the arbitration agreement did not exist); *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 319-20 (D. Colo. 1991) (the agreement provided for arbitration before the Legal Fee Arbitration Committee of the Colorado Bar Association, which declined to hear the arbitration); *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364-66 (N.D. Ill.), *reconsideration denied*, 742 F. Supp. 1374 (N.D. Ill. 1990) (the Chicago Board of Trade declined to arbitrate the parties' dispute, despite its designation in the arbitration agreement).

Accordingly, the unavailability of the President of the Chamber of Commerce to appoint an arbitrator or the umpire is not a basis on which to avoid the Arbitration Clause of the Treaties.

**2.     The Arbitration Clause Is Not Contrary to Morals and Public Order**

Integrand argues that the Arbitration Clause of the Treaties is somehow "contrary to morals and public order" and, therefore, invalid because the parties agreed that the arbitrators "may abstain … from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business." *See* Doc. 74 at 9-11. Integrand fails to cite to a single case in which a court in Puerto Rico -- or anywhere else -- has invalidated an arbitration agreement that allows arbitrators to refrain from applying the strict rules of law. To the contrary,

the First Circuit has recognized that such provisions offer a "huge advantage" to the arbitral process by affording arbitrators with the "flexibility to custom-tailor remedies to fit particular circumstances." *First State Ins. Co. v. Nat'l Cas. Co.*, 781 F.3d 7, 12 (1st Cir. 2015).

Integrand's reliance on the Puerto Rico Arbitration Act and the Puerto Rico International Commercial Arbitration Act to support its argument is particularly misplaced. *See* Doc. 74 at 10-11. Both statutes in fact support the enforceability of the Arbitration Clause of the Treaties. Under the Puerto Rico Arbitration Act, if the arbitration agreement is silent as to whether the arbitrators must strictly follow the law, then "'the arbitrators may declare law as they please, and no award will be vitiated because of their legal errors.'" *Garrison v. Palmas del Mar Homeowners Ass'n*, 538 F. Supp. 2d 468, 476 (D.P.R. 2008), *quoting Rivera v. Samaritano & Co., Inc.*, 8 P.R. Offic. Trans. 640, 108 D.P.R. 604, 609 (1979).

As to the Puerto Rico International Commercial Arbitration Act, Integrand relies on Article 7.01, which provides, in part, that "[t]he arbitral tribunal shall decide the dispute pursuant to the rules of law chosen by the parties as applicable to the substance of the dispute." *See* 32 L.P.R.A. § 3247(1). Integrand ignores that Article 7.01 states further that the parties can agree that the panel is not required to strictly follow the law: "The arbitral tribunal shall decide *ex aequo et bono* or *as amiable compositeur*, only if the parties have expressly authorized it to do so." *See* 32 L.P.R.A. § 3247(3). "*Ex aequo et bono*" is defined in *Black's Law Dictionary* (10th ed. 2014) as follows: "According to what is equitable and good. A decision-maker (esp. in international law) who is authorized to decide *ex aequo et bono* is not bound by legal rules and may instead follow equitable principles." Here, Integrand and Everest effectively agreed that the arbitration panel would decide any dispute *ex aequo et bono*.

6

Integrand also asserts misleadingly that "the parties submitted themselves to the substantive law of the Commonwealth of Puerto Rico in the Jurisdiction Clause of the Reinsurance Contracts by agreeing that the 'validity, construction and performance of this Agreement shall be governed by the laws of the Commonwealth of Puerto Rico….'" Doc. 74 at 10.  Integrand, however, entirely omitted the introductory provision of the Jurisdiction Clause, which states:  "*Except as provided by the Arbitration Article*" (emphasis added).  This introductory provision makes clear that the Jurisdiction Clause has no bearing on the arbitrators' authority, as set forth in the Arbitration Article, to "abstain … from strictly following the rules of law and [to] make their decision according to the practice of the reinsurance business."

3. **The *Rebus Sic Stantibus* Doctrine Does Not Apply**

According to Integrand, the *rebus sic stantibus* doctrine should be applied to eliminate the Arbitration Clause from the Treaties because Hurricanes Irma and Maria resulted in "unprecedented" and "ongoing" damages and "there is an overriding national public policy interest" in having Puerto Rico law strictly apply to the Treaties.  Doc. 74 at 11-12.  This self-serving, unsupported argument does not pass the straight-face test.  Nonetheless, the *rebus sic stantibus* doctrine is inapplicable because it does not apply to aleatory contracts, such as the Treaties, or to foreseeable events, such as hurricanes in Puerto Rico.  *See Lopez Morales v. Hosp. Hermanos Melendez, Inc.*, 460 F. Supp. 2d 288, 292 (D.P.R. 2006); *In re Chase Monarch Int'l Inc.*, 581 B.R. 715, 722 (D.P.R. Bankr. 2018).

4. **The Doctrine of Contract Frustration Does Not Apply**

Another frivolous argument proffered by Integrand is that Everest Re, by raising issues as to the qualifications of Integrand's party-appointed arbitrator, somehow so frustrated the arbitral process that the Arbitration Clause of the Treaties must be invalidated.  Doc. 74 at 12-13.

Neither case cited by Integrand involves arbitration, let alone, an arbitration agreement subject to the FAA. Further, the application of the Commonwealth's doctrine of frustration to invalidate an arbitration agreement would be preempted by the FAA. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) ("Although [FAA] § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives").

**B.     Integrand's Claims against Everest Re Are Subject to Arbitration**

Integrand contends, without more, that its federal and state antitrust claims and its "tort" claims under the Puerto Rico Insurance Code are not arbitrable. Doc. 74 at 13-14. In so doing, Integrand makes no effort to establish that those claims fall outside the broad scope of the Arbitration Clause of the Treaties, which provides: "Disputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to Arbitration."

Integrand also ignores the case law holding that antitrust and other statutory claims are arbitrable. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628-29 (1985) (holding that Sherman Acts claims were encompassed by the arbitration clause in an agreement embodying an international commercial transaction); *Seacoast Motors of Salisbury, Inc. v. DaimlerChrysler Motors Corp.*, 271 F.3d 6, 6-12 (1st Cir. 2001) (holding, in a domestic commercial transaction, that a claim under an unfair trade practices act was arbitrable, even if it were characterized as an antitrust claim); *Cellu-Beep, Inc. v. Telecorp, Inc.*, 322 F. Supp. 2d 122, 124-25 (D.P.R. 2004) (holding that claims under the federal antitrust laws, the Puerto Rico Dealers Act, and the Puerto Rico Sales Representatives' Act were arbitrable).

Integrand notes that "the First Circuit Court of Appeals has invalidated provisions of arbitration agreements that prevent the vindication of statutory rights under federal law." Doc. 74 at 14-15, *citing Kristian v. Comcast Corp.*, 446 F.3d 25, 29 (1st Cir. 2006). In *Kristian*, 446 F.3d at 45-48, the First Circuit held, *inter alia*, that federal antitrust claims were arbitrable and did not infringe statutory rights on the basis that a damages limitation in the arbitration agreement did not apply to such claims. Here, the Arbitration Clause of the Treaties does not contain a damages limitation or any other term or condition that would prevent the vindication of Integrand's asserted statutory rights. Integrand does not assert otherwise.

Finally, Integrand disregards the case law holding that broad arbitration language, such as that used in the Arbitration Clause of the Treaties, "covers contract-generated or contract-related disputes between the parties however labeled." *Acevedo Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir. 1975). *See also Benitez-Navarro v. Gonzalez-Aponte*, 660 F. Supp. 2d 185, 193 (D.P.R. 2009) ("whether a particular claim is arbitrable or not does not turn on the label-'tort' or 'contract'-a party chose to affix to the claim") (internal quotations and citations omitted). Thus, even though Integrand characterizes its claim under the Puerto Rico Insurance Code as a "tort action," that characterization does not preclude arbitration of that claim.

IV.   **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in its Motion, Everest Re respectfully requests that this Court grant its Motion to Dismiss and to Compel Arbitration.

**WHEREFORE**, Everest Re respectfully requests that this Court dismiss Integrand's action against Everest Re and compel arbitration of the dispute between Integrand and Everest Re.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 14th day of May, 2019.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**COLÓN & COLÓN, P.S.C.**
P.O. Box 9023355
San Juan, Puerto Rico 00902-3355
Tel. (787) 758-6060
Fax. (787) 753-1656

s/ Francisco J. Colón-Pagán
Francisco J. Colón-Pagán
USDC-PR No. 120503
FJColon@colonlaw.com

Joseph J. Schiavone (*admitted pro hac vice*)
Vincent J. Proto (*admitted pro hac vice*)
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
Tel. (973) 622-3333
Fax. (973) 622-3349