**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Integrand Assurance Company,**<br>Plaintiff,<br><br>v.<br><br>**Everest Reinsurance Company et al.,**<br><br>Defendants. | Civil No. 19-1111 (DRD) |

## I.   Introduction

On February 4, 2019, Defendants removed the instant suit from the Commonwealth of Puerto Rico Court of First Instance to the United States District Court for the District of Puerto Rico based on diversity jurisdiction. Docket No. 1. The suit relates to an Amended Complaint filed by Integrand Assurance Company (hereinafter, "Integrand") against Everest Reinsurance Company ("Everest"), Odyssey Reinsurance Company ("Odyssey"), Catlin (XL Catlin) Underwiring, Inc. ("Catlin"), Swiss Reinsurance America Corporation Armonk ("Swiss"), Allied World Reinsurance Management Company for and On Behalf of Lloyd's Syndicate 2232 ("Allied"), MS Amlin Underwriting Limited ("Amlin"), Aspen Insurance UK Limited Trading as Aspen Re London, England ("Aspen"), and Liberty Specialty Services Ltd Lib 4472 ("Liberty")(hereinafter all collectively referred to as "Defendants").

Through the instant law suit Integrand seeks to enforce the reinsurance contracts executed with each of the Defendants. The purpose of the reinsurance contracts was to recover the allotment of payments made by Integrand to its insureds resulting from the damages caused by hurricanes Irma and Maria. *See* Docket No. 11. Defendants moved to dismiss the Complaint requesting the Court to order immediate arbitration pursuant to the arbitration clauses contained in the reinsurance contracts.[1] *See* Docket Nos. 10, 36, 56, 68, 72.

At the time the dispositive motions were pending, Integrand informed the Court that on May 31, 2019, the Commissioner of Insurance filed a petition in state court to commence a rehabilitation procedure on behalf of Integrand under Chapter 40 of the Puerto Rico Insurance Code. The state court granted the Commissioner's petition and entered a *Rehabilitation Order*. Id., Exhibit 1. Pursuant to the *Rehabilitation Order*, Integrand requested to stay the instant federal law suit, and the Court granted the request. Docket Nos. 93 & 96. On September 23, 2019, the state court entered an order converting the receivership into a liquidation proceeding pursuant to Article 40.130(a) of the Insurance Code. Docket No. 129 at 1.

---

[1] All the arbitration clauses in the reinsurance contracts are identical and read the same. As such, the Court will refer to them hereinafter as the "arbitration clause" or "arbitration provision".

## II. The Amended Verified Complaint ("Complaint")

The Complaint alleges that Integrand, in an effort to protect themselves, entered into reinsurance contracts with the Defendants to seek reimbursement of payments issued to Integrand's insureds as a result of the destruction caused by hurricanes Irma and Maria. Docket No. 11, ¶¶ 1, 2. According to the Complaint, the common industry practice was that local insurers would pay claims filed by their insureds, and thereafter the insurers would claim to their reinsurers the amounts dispersed in accordance with the terms and conditions of their agreements. Id., ¶ 2.

Specifically, Integrand executed reinsurance contracts with Defendants, with effective date of May 1st, 2017. Id., ¶ 14. After the passage of hurricane Irma on September 6, 2017, Integrand obtained coverage for a second catastrophic event through a Restatement Protection Program (RPP), which restored the catastrophe reinsurance limit to its full amount. Id., ¶15. The Complaint alleges that the reinsurance contracts obligated Defendants to accept and honor payment for all risks underwritten by Integrand within an agreed limit, and specified classes of coverage or layers, depending on the magnitude of the loss. Id., ¶16.

Defendants allegedly have delayed the required payments for more than nine (9) months since the first audit of Integrand's records

and continue to this date. Id., ¶18. Integrand avers that Defendants' actions of not honoring the terms of the reinsurance agreements caused the accrediting entity of the insurance sector to degrade Integrand's solvency classification. Id., ¶23.

The Complaint requests the Court to issue injunctive relief ordering Defendants to immediately cease the delay of reimbursing the claims filed by Integrand related to hurricanes Irma and Maria. Id., ¶29. Integrand requests compensation for three times the amount suffered in damages, plus prejudgment interest, costs and attorney's fees pursuant to the Clayton Act. Id., ¶34. Integrand additionally requests the Court to issue a declaratory judgment that the arbitration clause of the reinsurance contracts is null due to its ambiguity and defects. Id., ¶46. Lastly, Integrand seeks to recover damages for breach of the terms and conditions of the reinsurance contracts. Id., ¶56.

### III. The Motions to Dismiss and Compel Arbitration

The arbitration covenant included within the contracts executed between Integrand and the Defendants states the following:

**ARBITRATION**

1. Disputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to Arbitration. This Arbitration shall be a condition precedent to the commencement of any action at law.

2. Each party shall appoint an Arbitrator and the two so named shall, before they enter upon the Arbitration, appoint an Umpire. In the event of one party failing to name an Arbitrator within 30 (thirty) days of the other party requesting it in writing to do so, or in the event of the Arbitrators failing to appoint an Umpire within 30 (thirty) days of their own appointments, the said Arbitrator and/or Umpire shall be appointed by the President of the Chamber of Commerce in the city where the Arbitration takes place.

3. The Arbitrators and Umpire shall be disinterested current or retired executive officers of insurance or reinsurance companies or Underwriting Members at Lloyd's. The Court of Arbitration shall be in San Juan, Puerto Rico, unless some other place is mutually agreed upon by parties in this Agreement.

4. Within 30 (30) days after the appointment of the Umpire, the Arbitrators and Umpire shall meet, and determine a timely period for discovery, discovery procedures and schedules for hearings. Should the two Arbitrators fail to agree, then the matter in dispute shall be referred to the Umpire. The Arbitrators and Umpire shall make their award with a view to effecting the general purposes of this Agreement. They may abstain from judicial formalities and from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business.

5. The Arbitrators or Umpire shall give an award in writing within 60 (sixty) days of the hearing or, if no hearing is held, the submission of all evidence by the parties. The award agreed upon by the two Arbitrators or by the majority of the arbitrators and the Umpire shall be final and binding on both parties. The costs of Arbitration shall be paid as the Court of Arbitration directs. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in a territory in which the party in default is domiciled or has assets or carries on business.

6. If an Arbitrator or Umpire, subsequent to this appointment, is unwilling or unable to act, a new Arbitrator or Umpire shall be appointed instead by the aforementioned procedure.

*See* Docket no. 11, ¶ 42.

**a. Odyssey's Motion to Dismiss (Docket No. 10)**

Odyssey and Integrand executed two reinsurance agreements effective May 1, 2017. Upon Integrand's demand of payment for losses caused by hurricane Irma, Odyssey asserted its "right of inspection" under the reinsurance agreements to inquire the nature and extent of Integrand's split of alleged losses. When the day for the audit approached, Integrand refused to allow Odyssey to review certain records. On December 5, 2018, Integrand then served Odyssey with a "demand for arbitration" letter.

On December 14, 2018, Integrand sent Odyssey a letter naming Integrand's party-appointed arbitrator. In response, on January 4, 2019, Odyssey sent Integrand a letter selecting another arbitrator, and informing counsel for Integrand that their proposed candidate did not comply with requirements set forth in Subparagraph 3 of the Arbitration Clause.[2] On January 8, 2019, Integrand sent a letter to Odyssey arguing their proposed candidate did comply with the requirements of the arbitration clause.

On February 2, 2019, Odyssey received an email from Integrand's counsel advising that the company had filed a state

---

[2] The clause requires arbitrator to be disinterest current or retired executive officers of insurance or reinsurance companies or Underwiring Members at Lloyd's. Docket No. 10 at 3-4. Odyssey claimed that Integrand's candidate had never occupied an executive position with an insurance or reinsurance company.

level lawsuit seeking annulment of the arbitration clause. Odyssey proceeded to remove the case to this Court.

Odyssey seeks dismissal of the Complaint and requests the Court to compel arbitration. Integrand filed a response to Odyssey's request to compel arbitration. Docket No. 18.

### b. Swiss' Motion to Dismiss (Docket No. 36)

Swiss executed one reinsurance contract with Integrand, effective date of May 1, 2017. Integrand submitted claims to Swiss for damages disbursed to insureds from hurricanes Irma and Maria. Swiss paid more than $28 million but declined to pay more. Subsequently, the instant suit was filed and removed to federal court.

Swiss seeks dismissal of the Complaint and requests the Court to compel arbitration. Integrand filed a response to the defendant's motion. Docket No. 47. Swiss then filed a reply. Docket No. 55.

### c. Catlin's, Amlin's, Aspen's and Liberty's Motion to Dismiss (Docket No. 56)

Caitlin and Aspen executed with Integrand a Commercial Property Quota Share Reinsurance Agreement, with effective date on May 1, 2017. Additionally, Caitlin, Aspen and Liberty executed a Commercial Catastrophe Excess of Loss Reinsurance Agreement, with

effective date on May 1, 2017. Both agreements contained the same "Right of Inspection" and "Arbitration" clauses.

Caitlin, Aspen and Liberty exercised their contractual "right of inspection", and sought access to Integrand's records, books and accounts "after identifying certain issues and/or inconsistencies with the distribution of losses between hurricane Irma and Maria related to Integrand's cash calls." Docket No. 56 at 3. Integrand resisted to provide the requested information. Caitlin, Aspen and Liberty exercised their contractual right to arbitration by serving a Notice of Arbitration upon Integrand.

Defendants request the Court to compel arbitration of all causes of actions set forth by Integrand. Integrand filed a response in opposition to the request. Docket No. 69. Defendants filed a reply. Docket No. 77. Integrand filed a sur-reply. Docket No. 86.

### d. Everest's Motion to Dismiss (Docket No. 68)

Everest and Integrand executed a reinsurance agreement, with effective date of May 1, 2017. Additionally, the parties executed a Personal Line Catastrophe Excess of Loss Reinsurance Agreement, also with effective date of May 1, 2017. Both agreements contained the same arbitration clauses.

After both hurricanes Irma and Maria, Integrand sought to recover from Everest amounts claimed for losses allegedly arising under insurance policies issued by Integrand to insureds. Everest assures the company issued payments of all of Integrand's billings with respect to losses arising out of Hurricane Maria and all of Integrand's billings under the Personal Line Catastrophe agreement.

Everest invoked its "right of inspection" to inspect Integrand's claims of losses resulting from Hurricane Irma. The purpose of the inspection was to determine whether the losses reported by Integrand were in fact caused by Hurricane Irma and not by Hurricane Maria. Integrand failed to comply with Everest's request for inspection. As a result, Integrand has not paid the billings submitted by Integrand for the losses allegedly resulting from Hurricane Irma.

On November 16, 2018, Integrand served Everest with a demand for arbitration. On December 14, 2018, Integrand appointed its arbitrator. On the same day, Everest also appointed an arbitrator and contested Integrand's selection. Thereafter, Integrand filed suit in local court.

Everest requests the Court to compel arbitration as required under the agreements executed by the parties. Integrand filed an

opposition to Everest's request. Docket No. 74. Everest then filed a reply. Docket No. 76.

### e. Allied's Motion to Dismiss (Docket No. 72)

Integrand and Allied executed two reinsurance agreements, effective May 1, 2017. Allied has not been involved in any other related proceedings with Integrand, and has neither served, nor been served with an arbitration demand.

Allied requests the Court to dismiss the complaint and order that Integrand submit any potential claim against Allied to arbitration. Integrand opposed Allied's request. Docket No. 75. Allied then filed a reply. Docket No. 81.

## IV. Discussion

### A. The Federal Arbitration Act ("FAA")

Section 2 of the Federal Arbitration Act provides, in pertinent part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract.

9 U.S.C.A. §2.

Congress enacted the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-220, (1985), and to place arbitration agreements "upon the same footing as other contracts," Scherck v. Alberto-Culver Co., 417 U.S. 506, 511, (1974); See also Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 270-275 (1995).

Congress viewed the traditional judicial hostility towards arbitration as unwarranted given that "arbitration is simply a matter of a contract between the parties; it is a way to resolve those disputes— but only those disputes —that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, (1995). Furthermore, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than in a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

The language of Section 2 of the FAA is couched in imperative binding terms. That is, "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Southland Corp. v. Keating, 465 U.S. 1, 7

(1984). Indeed, "[s]ection 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary..." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

Furthermore, the Supreme Court has pronounced a specific presumption of arbitrability:

> Finally, **it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability** in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. **Doubts should be resolved in favor of coverage.'**

AT&T Technologies, Inc. v. Communications Workers of America, Inc., 475 U.S. 643, 650 (1986) (*citing* United Steelworkers of America v. Warrior & Gulf, 363 U.S. 574, 582-83 (1960) (emphasis ours).

Based on the above principles, the United States Court of Appeals for the First Circuit has set forth four requirements that must be satisfied for a court to grant a request to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause. InterGen

N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003). The Court proceeds to address each requirement individually.

### a. Valid Arbitration Agreement

Integrand requests the Court to declare the arbitration provision as null and void due to its ambiguity and defects. Docket No. 11, ¶ 46; Docket No. 18 at 8. Specifically, Integrand argues the arbitration clause is ambiguous because it does not set forth a mechanism to resolve Defendants' objections to the designation of Integrand's selected arbitrator, and for this reason, the clause is ambiguous. Docket No. 18 at 12.[3] Further, Integrand argues that in the alternative, the reinsurance contracts must be revised to nullify the arbitration covenant in accordance with the *rebus sic stantibus* doctrine.[4]

The Court does not consider the arbitration provision is ambiguous. First, the reinsurance agreement's silence on the manner to resolve a party's objection to the other's designation of an arbitrator does not render the arbitration provision unenforceable. *See* Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 89-91 (2000). The Supreme Court has recognized that when

---

[3] These same responsive arguments were raised by Integrand in each response to Defendants' motions to compel arbitration. *See* Docket Nos. 18, 47, 69, 75.

[4] The Court is surprised that Integrand questions the validity of the arbitration provision considering Integrand acknowledged the applicability of the provision to the instant litigation when the company itself commenced arbitration proceedings against Everest and Odyssey to claim payment under the reinsurance agreements. (Docket No. 11, ¶ 43) The Court will not authorize Integrand to play "fast and loose" with the Court. *See e.g.* Patriot Cinemas, Inc. v. General Cinemas Corp., 834 F.2d 208 212 (1st Cir. 1987)(noting that the Court cannot allow litigants to "play fast and loose" with the Court.)

an arbitration agreement is silent on a subject, "[t]hat fact alone is plainly insufficient to render it unenforceable." Id. at 91. To invalidate the arbitration clause on that basis would undermine the liberal federal policy favoring arbitration. Therefore, the Court does not consider the arbitration provision is unenforceable due to the failure to include a method for the selection of an arbitrator upon a party's objection to a designation.

Second, the FAA can supplement any potential ambiguity or gap that exists regarding the procedure that should be followed when one party disagrees about the designated arbitrator of the other. Section 5 of the FAA provides a statutory scheme for appointment of an arbitrator in the event the parties to an arbitration agreement reach an impasse, such as in the case at bar. Specifically, Section 5 of the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but ... **if for any other reason there shall be a lapse in the naming of an arbitrator ...., then upon the application of either party to the controversy the court *shall* designate and appoint an arbitrator...**

9 U.S.C.A. § 5 (emphasis ours).

The term "lapse" referred to in Section 5 has been defined as "'a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process,' **including a 'deadlock' in the naming of an arbitrator**." Odyssey Reinsurance

<u>Co. v. Certain Underwriters at Lloyd's London Syndicate 53</u>, 615
Fed. Appx. 22, 22-23 (2d Cir. 2015) (emphasis ours). As such, a
disagreement between the parties about an arbitrators' selection
is considered a "lapse" for purposes of Section 5 of the FAA.

In the case at bar, Everest and Odyssey objected to the
arbitrator suggested by Integrand because the individual allegedly
did not comply with the disinterest and experience requirements
set forth in the arbitration provision of the reinsurance
contracts. Section 5 of the FAA addresses and resolves any impasse
Integrand and the Defendants could have reached. Section 5 of the
FAA clearly provides that when there is a lapse in the naming of
an arbitrator, the court shall designate and appoint an arbitrator.
Integrand encountered a **_lapse_** in the naming of an arbitrator with
Everest and Odyssey when the co-defendants disagreed with
Integrand's selection. Consequently, the Court cannot consider the
arbitration provision is ambiguous when Section 5 of the FAA fills
the gap by establishing the procedure that should be followed when
the parties reach an impasse. Therefore, the Court deems the
arbitration clause is neither vague nor ambiguous.

Moreover, Integrand argues that under Puerto Rico law, the
arbitration provision is invalid because it is contrary to morals
and public order. According to Integrand, Article 1207 of the
Puerto Rico Civil Code provides that "[t]he contracting parties
may (...) establish the clauses and conditions which they may deem

advisable, provided they are not in contravention of law, morals, or public order". P.R. Laws Ann. tit. 31 § 3372.[5] Inasmuch as the arbitration provision explicitly states that the arbitrators and umpire "**may abstain (...) from strictly following the rules of law and shall make their decision according to the practice of the reinsurance business,**" then Integrand argues the arbitration covenant is in violation of Article 1207 of Puerto Rico Civil Code.

The Court disagrees with Integrand's argument that Puerto Rico law controls the interpretation of the arbitration provision. The Supreme Court has stated that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). In relation to such inquiry, a court is to determine whether the parties agreed to arbitrate "[b]y applying the '**federal substantive law of arbitrability**, applicable to any arbitration agreement within the coverage of the [FAA]'." Id. (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983)) (emphasis added).

Recently, the Supreme Court explained that "although courts may ordinarily [enforce arbitration agreements] by relying on state contract principles, *First Options of Chicago, Inc. v.*

---

[5] Integrand argues that state contract law should apply to decide whether the arbitration clause is null and void. Docket No. 47 at 9-10.

*Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), **state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA**, *Concepcion*, 563 U.S. at 352, 131 S.Ct. 1740 (internal quotation marks omitted)." *See* <u>Lamps Plus, Inc. v. Varela</u>, 139 S. Ct. 1407, 1415 (2019) (emphasis added). Accordingly, the Court understands that the FAA trumps any state law that undermines the liberal federal policy favoring arbitration, such as is the case with Article 1207 of Puerto Rico Civil Code. Therefore, the Court denies Integrand's request to find the arbitration provision is in violation of Article 1207 of the Puerto Rico Civil Code.

Moreover, the provision Integrand seeks to invalidate is referred to as an "honorable engagement provision." The language directs the arbitrators to "make their award with a view to effecting the general purposes of this Agreement" and goes on to explain the arbitrators are relieved from "strictly following the rules of law and shall make their decision according to the practice of the reinsurance business." Docket No. 36, Exhibit 1 at 23. The First Circuit has endorsed with optimism the use of the "honorable engagement provision" by describing them as "a huge advantage" considering "the prospects for successful arbitration are measurably enhanced if the arbitrators have flexibility to custom-tailor remedies to fit particular circumstances." <u>First</u>

State Co. v. National Cas. Co., 781 F.3d 7, 12 (1st Cir. 2015).
Further explaining that "an honorable engagement provision ensures
that flexibility." Id. Consequently, Integrand's objection to the
validity of the "honorable engagement provision" is unavailing.

Lastly, Integrand argues that the Court should apply the
doctrine of *rebus sic stantibus* to invalidate the arbitration
provision because Hurricanes Irma and Maria resulted in
unprecedented damages. It is well known that, so long as a contract
is in accordance with the principles of good faith, use, and law,
the stipulations agreed upon by the parties are binding and must
be complied.[6] There are certain situations, however, in which this
contractual principle may be bypassed and the courts can resolve
the situations based on the principles of equity and good faith.
BPPR v. Sucn. Talavera, 174 P.R. Dec. 686, 694 (2008). One of these
instances is the *rebus sic stantibus* doctrine, through which a
change of circumstance merits the review of the contractual
obligations stipulated between the parties. Id. For this remedy to
be applicable, the party seeking the remedy must meet the following
requirements, namely:

---

[6] "Contracts are perfected by mere consent, and from that time they are binding,
not only with regard to the fulfillment of what has been expressly stipulated,
but also with regard to all the consequences which, according to their
character, are in accordance with good faith, use, and law." 31 P.R. Laws §
3375. In similar respect, Section 3451 of the Civil Code of Puerto Rico also
states that "[c]ontracts shall be binding, whatever may be the form in which
they may have been executed, provided the essential conditions required for
their validity exist." 31 P.R. Laws § 3451 (2015).

(1)  The basic unforeseeability test, which implies a question of fact dependent [sic] on each case's circumstances.

(2)  That there be an extraordinary difficulty. An aggravation of conditions to such degree that performance would be much more burdensome for the promisor. This does not have to reach the extraordinary stage in which such difficulty would be confounded with impossibility to perform, which is another question of fact on [sic] which no general rules can be easily given.

(3)  That risk not be the determining cause of the contract, as in the case in aleatory contracts.

(4)  That there be no fraudulent acts by any of the parties, since the effects of the supposed offenses and quasi-offenses are specifically predetermined by law.

(5)  That the contract be an installment contract or one projected into the future, so that it have [sic] a certain duration, since such problem does not exist with contracts which are to be immediately performed or those which have been performed already.

(6)  That the change of circumstances be subsequent to the execution of the contract (since it would otherwise be incompatible with the very concept of unforeseen event) and that it be permanent to a certain degree (an element which is also necessarily concomitant with the required extraordinariness of the change).

(7)  That there be a petition by the interested party.


_Casera Foods, Inc. v. E.L.A_, 108 P.R. Dec. 850, 8 P.R. Offic. Trans. 914 (1982).

The Court notes that the doctrine of _rebus sic stantibus_ is an _extraordinary_ remedy "which should be employed _only in exceptional instances_ requiring a judicious and scrupulous

moderating judicial discernment." Id. at 857, P.R. Offic. Trans.
at 922 (emphasis added); *See also* Medina & Medina v. Country Pride
Foods, Ltd., 631 F.Supp. 293, 298 (1986) ("[*Rebus sic stantibus*]
is, however, an extraordinary remedy to be applied only in extreme
circumstances.") Furthermore, the remedy can only proceed if the
invoking party meets all of the requirements transcribed above.
Casera Foods, Inc., 108 P.R. Dec. at 857, 8 P.R. Offic. Trans. at
922. If any one of the requirements is not met, the remedy is
inapplicable. Id.

Integrand claims this case presents an extraordinary
circumstance that merits the application of the *rebus sic stantibus*
doctrine due to the unforeseeable nature of Hurricane Maria. As
this Court has previously stated, this doctrine is an *extraordinary
remedy, only to be used in exceptional circumstances*; the party
seeking its applicability must meet all seven requirements. The
Court need not go beyond the first requirement. It is well known
that hurricanes are a common occurrence in the Caribbean.
Therefore, a hurricane "may be reasonably anticipated, thus
allowing people to make last minute arrangements." De la Cruz v.
Toro Sintes, 112 P.R. Dec. 650, 657, 12 P.R. Offic. Trans. 811,
820. [7] Although the events of Hurricane Maria were devastating and

---

[7] See also *Bocanegra Nieves v. Lopez Perez*, T.C.A. 1, 8 (2005), 2005 WL 2705957,
which states:
    The passing of a hurricane through the island is foreseeable. There
    is a hurricane season every year on this island and, although an
    atmospheric phenomenon does not strike us every year, it is expected

unfortunate, this Court is of this opinion that a natural disaster such as this one is not unforeseeable. Therefore, the Court concludes the *rebus sic stantibus* doctrine does not apply.

In sum, the Court thus finds that each reinsurance contract at issue contains a valid arbitration provision executed between Integrand and the Defendants.

### b. The Moving Party Must be Entitled to Invoke the Arbitration Clause

The second requirement is that the party moving to compel arbitration be entitled to invoke the arbitration clause. This requirement is satisfied where the movant is a signatory or party to the agreement containing the arbitration provision. <u>Torres-Rosario v. Mariott Int'l</u>, 872 F. Supp.2d 149, 153 (D.P.R. 2012).

The moving parties- Odyssey, Swiss, Catlin, Amlin, Aspen, Liberty, Everest and Allied- are all signatories to the Agreements containing the arbitration clause. Thus, Defendants are entitled to invoke the arbitration clause.

### c. The Other Party Must be Bound by the Clause

The third requirement is that Integrand must be bound by the arbitration clause. The First Circuit has interpreted this inquiry to mean that courts must be wary of forcing arbitration in

---

to happen at any moment. Furthermore, compliance with the contract was not extremely difficult nor onerous, indeed the obligation remained unaltered. The only change, accepted by both parties, was the loss of electrical and communication services for [about a month]. The [appellant] cannot take advantage of the situation created after the passing of the hurricane to fail to comply with the leasing contract. (Translation ours).

"situations in which the identity of the parties who have agreed to arbitrate is unclear." InterGen N.V. v. Grina, 344 F.3d at 143. In the case at bar, there is no ambiguity regarding the identity of the signatories of the reinsurance agreements. Integrand admits to executing the agreements and performing its obligations for several years. Docket No. 11, ¶ 22. Therefore, Integrand is bound by the arbitration clause.

### d.   Claim Must Fall Within the Scope of the Arbitration Clause

Integrand argues that the antitrust and Puerto Rico Insurance Code claims are not covered by the scope of the arbitration clause because such claims are noncontractual obligations that arise out of the Defendants' duty to comply with state and federal law. The conduct alleged in the Complaint is proscribed by both federal and state antitrust laws, which provide for statutory damages that aggrieved parties have a right to recoup from transgressors. 15 U.S.C. § 15; PR Laws Ann. tit. 10 § 268. Integrand claims that the antitrust and Insurance Code legislation are non-contractual obligations that arise out of the Defendants' duty to comply with applicable law, and thus are not covered under the arbitration clause.

In *Mitsubishi Motors Corp.,* the Supreme Court of the United States rejected the position that antitrust claims cannot be submitted to arbitration involving international commercial

transactions. <u>Mitsubishi Motors Corp.</u>, 473 U.S. at 628-29. Subsequently, the Supreme Court has held that even if international commerce is not involved, arbitration clauses are applicable to claims arising from federal statutes, unless the statute reveals a congressional intention to preclude a waiver of judicial remedies. <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 26 (1991). Nothing in the Sherman Act or the Clayton Act shows a congressional intention to preclude a waiver of judicial remedies. Therefore, Integrand's argument that arbitration is inappropriate for antitrust claims fails as a matter of law.

The arbitration clause executed between Integrand and the Defendants provides that "[d]isputes arising out of this Agreement or concerning its interpretations or validity, whether arising before or after its termination, shall be referred to Arbitration." Docket No. 11, ¶ 42. The Court finds the arbitration clause is broad and applies to all claims arising out of the alleged delay in payments by the Defendants under the reinsurance agreements. All causes of action asserted in the Complaint arising out of the contractual dispute are arbitrable.[8]

---

[8] The Supreme Court has recognized that except where "the parties clearly and unmistakably provide otherwise," *AT & T Technologies,* 475 U.S. at 643, it is "the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning" a particular matter, *Id.*, at 651.

Accordingly, the Court dismisses Integrand's action against the Defendants and compels arbitration between the parties.

## B. Local State Liquidation Procedure does not Preempt the Federal Arbitration Act

On May 30, 2019, the Commissioner of Insurance filed a petition in state court to commence a delinquency proceeding against Integrand under Chapter 40 of the Insurance Code; the case of *Comisionado de Seguros de P.R. v. Integrand Assurance Company*, Civil Case No. SJ2019CV05526. Docket No. 93. After notice and a hearing, the Court granted the Commissioner's petition and entered a Rehabilitation Order. Docket No. 93, Exhibit 1. In consideration of the Rehabilitation Order, Integrand requested the Court to stay the instant federal proceeding for a term of ninety (90) days or for any additional necessary time. Docket No. 95. The Court granted Integrand's request. Docket No. 96. On September 23, 2019, the state court entered an order converting the receivership into a liquidation proceeding pursuant to Article 40.130(a) of the Insurance Code, 26 L.P.R.A. § 4013.

Considering Integrand became insolvent during the pendency of the instant proceeding, the Court must address whether Integrand's state insurance liquidation proceeding allows the Court to compel arbitration under the FAA.

There is no existing statutory provision that expressly confers exclusive jurisdiction over the state court overseeing the

liquidation procedure to address all claims that involve Integrand. Specifically, the Puerto Rico Insurance Code does not provide for exclusive jurisdiction over matters involving the insurer. *See* 26 L.P.R.A. §§ 4001-4054; Docket No. 125. In the absence of such indication from the state legislature, the Court cannot assume that the liquidation procedure occurring in state court divests this Court of federal jurisdiction.

Moreover, even though there is no state law prohibiting arbitration when a party is under liquidation, the Supreme Court has established that by virtue of the Supremacy Clause, the FAA trumps any inconsistent state statute. AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011). In enacting the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). Specifically, the Supreme Court reaffirmed that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." AT&T Mobility LLC, 563 U.S. at 341. Therefore, the Court would not be allowed to apply a state statute that would potentially invalidate the arbitration provision. *See* Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995).

In sum, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp., 460 U.S. at 24–25. The Court previously determined that the arbitration provision at issue is broad in scope and calls for the arbitration of all disputes. Further, the Court understands that the arbitration of Integrand's claims against Defendants will not interfere with the state's insolvency scheme. Nonetheless, if there was an existing state law, which the Court found no such law existed, that prohibits arbitration of disputes involving an insolvent insurer, then the FAA would preempt such law. Considering the arbitration clause encompasses the present suit and considering the strong presumption in favor of arbitration, the Court orders the parties to arbitrate the dispute.

## V.   Conclusion

Based on the foregoing, the Court makes the following rulings:

- The Court **GRANTS** Odyssey's *Motion to Dismiss and to Compel Arbitration.* Docket No. 10.
- The Court **GRANTS** Swiss's *Motion to Dismiss.* Docket No. 36.
- The Court **GRANTS** Catlin's, Amlin's, Aspen's and Liberty's *Motion to Dismiss.* Docket No. 56.

- The Court **GRANTS** Everest's *Motion to Dismiss the Amended Complaint and to Compel Arbitration.* Docket No. 68.
- The Court **GRANTS** Allied's *Motion to Dismiss*. Docket No. 72.

Accordingly, the Amended Complaint (Docket No. 11) is hereby **DISMISSED** and the parties are hereby ordered to proceed to arbitration of the disputes forthwith in accordance with the terms of the arbitration provision.

  **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of December, 2019.

                              /S/ DANIEL R.DOMÍNGUEZ
                              DANIEL R. DOMÍNGUEZ
                              U.S. District Judge